A94A0641. SOUTHERN MUTUAL INSURANCE COMPANY
v. MASON et al.
(445 SE2d 569)

JOHNSON, Judge.

We granted Southern Mutual's application for interlocutory re-

view of the trial court's denial of its motion for summary judgment in a declaratory judgment action. Southern Mutual sought a determination that it was relieved of its obligations under a homeowner's liability policy because the shooting death giving rise to the claim was the result of an expected or intended act of the insured within the express terms of an exclusion contained in the subject insurance policy. We affirm the denial of summary judgment.

The events giving rise to this action are as senseless as they are tragic, and illustrate the fatal consequences which all too often result from the volatile mix of teenagers and handguns. The facts as presented herein are viewed in the light most favorable to the non-moving party as required, and are taken from the deposition testimony of Stuart Placeres. OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Chip Mason was a friend of Terry Placeres, and was known to Terry's 15-year-old brother, Stuart. On the date of the shooting incident which underlies this action, Mason went to the Placereses' home seeking money from the boys after an argument with his mother. Mason told the brothers that he was running away from home and that is why he needed money. Mason had a handgun in his possession, which he allegedly admitted having stolen from the home of a retired police officer. Mason showed the gun to Stuart Placeres. Placeres told Mason to be sure the gun was not loaded, and Mason removed the bullets from the gun before handing it to Placeres. Placeres placed the bullets in a closet.

Later in the evening, Stuart Placeres and Mason argued because Placeres believed Mason had stolen money from him. Placeres picked up the gun and told Mason that he was not going to leave until Mason returned his money. Mason denied having taken the money. Placeres threatened to retrieve the bullets from the closet, but Mason offered him a bullet which he had in his pocket. Placeres loaded the bullet into the gun. He believed at the time that he had loaded the bullet in a position in the revolver's cylinder which would rotate away from the hammer if the trigger was pulled so that the gun would not fire. The verbal exchange between the two continued. Placeres admitted that he pointed the gun at Mason, who told Placeres again that he did not have the money and asked "so what are you going to do, shoot me?" Placeres admitted that at this point he intentionally pulled the trigger, and did so knowing that the gun was pointed at Mason at the time.[1] The gun fired, and Mason was killed. Originally charged with murder, Placeres pled guilty in Juvenile Court to committing a delinquent act which amounted to the crime of involuntary manslaughter.

---

[1] At another point in his testimony Placeres indicates that he cannot say if he was aiming (as opposed to pointing) the gun at Mason.

1. The first issue in this case concerns the meaning and application of an exclusion in the subject insurance policy. The exclusion reads as follows:

## "SECTION II - EXCLUSIONS

**"1. Coverage E — Personal Liability and Coverage F — Medical Payment to Others —** do not apply to **bodily injury** or **property damage:**

"a. which is expected or intended by the **insured."**

It is not disputed that Stuart Placeres is an "insured" under the policy definition. This court has previously held that the language of such "expected and intended" exclusions is "plain, unambiguous, and capable of only one reasonable interpretation." *Stein v. Mass. Bay Ins. Co.*, 172 Ga. App. 811, 812 (324 SE2d 510) (1984). Therefore, if the injury and subsequent death of Chip Mason was either expected or intended by Stuart Placeres, the subject insurance policy provides no coverage.

It is undisputed that Placeres intended to pull the trigger of a loaded gun, an instrument capable of inflicting serious injury or death, while he was pointing the gun at Mason. Placeres readily admits that he pulled the trigger of the gun in order to frighten Mason, but he emphatically denies any intent to hurt or kill Mason. In effect, Placeres argues that the death of Mason was an accident covered by the policy because he did not "expect or intend" for the gun to actually fire.

In a case recently decided by this court, *Stinson v. Allstate Ins. Co.*, 212 Ga. App. 179 (441 SE2d 453) (1994), we held that if the consequences of an intentional or criminal act were foreseeable by a reasonable person, as opposed to by the insured, coverage for the resulting injury was barred by the exclusion. While factually the instant case may seem even more favorable to the insuror than *Stinson*, the specific language of the exclusion at issue in the *Stinson* case is much broader than the language of the exclusion here. There, the exclusion applied the "intentional or criminal" modifiers to the *act* of the insured rather than to the resulting injuries. In cases having the same or substantially similar language as employed in the exclusion in this case, we have held that intent in the context of the exclusion contemplates not only the commission of the act, but the consequences thereof. Thus, in decisions such as *Ga. Farm Bureau &c. Ins. Co. v. Machett*, 207 Ga. App. 588 (428 SE2d 636) (1993), which follows a line of cases beginning with *Stein v. Mass. Bay Ins. Co.*, supra, we held: " '[A]n insured who knowingly shoots another, but who does so in self-defense, causes bodily injury "expected or intended by the in-

sured." ' [Cit.]" *Machett* at 589. In other words, there was no coverage because the *injury* was expected or intended, and it made no difference that the act which produced the injury was in self-defense. The essential element, which is present in *Machett* and its precursors, is that the weapon was intentionally wielded for the purpose of injuring the victim, and therefore the exclusion applied. In this case, a genuine issue of material fact exists as to whether the weapon was wielded for the purpose of frightening the victim into returning money *after it had been loaded in such a fashion that the insured believed would prevent it from firing,* or whether it was wielded for the purpose of injuring the victim. If one has loaded a gun in such a manner as to reasonably believe that the gun will not fire, an injury which results from the gun firing is neither expected nor intended. See *Ga. Farm Bureau &c. Ins. Co. v. Hurley,*[2] 190 Ga. App. 546 (379 SE2d 420) (1989) and *Southern Guaranty Ins. Co. of Ga. v. Saxon,* 190 Ga. App. 652 (379 SE2d 577) (1989). In *Saxon,* supra, the issue was the availability of coverage for injuries sustained following a high-speed chase, in which the driver articulated that his intent had been to elude police. That case is not distinguishable from the case under consideration except insofar as the dangerous instrumentality which produced the injuries was an automobile rather than a handgun.

This case also differs factually from *Thompson v. Prudential Ins. Co. of America,* 84 Ga. App. 214 (66 SE2d 119) (1951) in that the insured in *Thompson,* engaged in a game of "Russian Roulette," made no attempt to ascertain the position of the cartridge in the cylinder, whereas in this case, according to his testimony, Placeres placed the bullet into the cylinder in such a position that he believed the gun would not fire. Though pulling the trigger of a loaded gun which is pointed at another is an inherently dangerous activity, if Placeres did in fact believe he had loaded the bullet so that the cylinder would rotate away from the hammer so that the gun would not fire, there would be a basis for a jury to conclude that no physical injury had been "expected or intended" by Placeres when he acted.

In considering a motion for summary judgment, this court as well as the trial court must construe the evidence and all reasonable inferences therefrom in favor of the respondent. *Lau's Corp.,* supra. Applying that rule in the instant case, we cannot say as a matter of law that Placeres' actions were so reckless as to make the resulting injuries intentional or expected within the meaning of the exclusion. The trial court correctly denied Southern Mutual's motion for summary judgment as to the exclusion.

---

[2] *Hurley* serves as physical precedent only, having been decided by a strongly divided court with only four judges concurring in the majority opinion.

2. Southern Mutual also asserts that summary judgment should have been granted because the insured's refusal to give a statement as required by the insurance policy voids coverage as a matter of law.

"It is well established that the insured has a duty to cooperate with his insurer in all aspects of a lawsuit and to make a full, fair, complete, and truthful disclosure of all facts relating to the accident. [Cit.]" *Hurston v. Ga. Farm Bureau &c. Ins. Co.*, 148 Ga. App. 324, 325 (1) (250 SE2d 886) (1978). There is no requirement, however, that the insured give a statement immediately upon demand. Southern Mutual complains that Placeres declined to be interviewed, on the advice of his attorney, while criminal charges were still pending against him. There is nothing in the record before us indicating that Placeres declined to cooperate upon the resolution of the criminal charges. "Willfulness and fraud are essential ingredients to substantiate the defense of failure to co-operate." *State Farm Mut. Auto. Ins. Co. v. Wendler*, 117 Ga. App. 227, 231 (160 SE2d 256) (1968). Neither of these ingredients is present in this case. Further, there has been no showing that Placeres' conduct adversely impacted upon Southern Mutual's ability to proceed in this action or to protect its rights as to the claim. "The non-cooperation must, of course, have been material — not merely technical or inconsequential in nature." (Citation and punctuation omitted.) *St. Paul Fire &c. Ins. Co. v. Albany Emergency Center*, 184 Ga. App. 469, 471 (361 SE2d 687) (1987). We conclude that the delay in obtaining a statement was immaterial under the particular facts of this case. The trial court did not err in denying Southern Mutual's motion for summary judgment on this issue.

3. Finally, Southern Mutual asserts that the trial court erred in denying its motion for summary judgment because it received oral rather than written notice of the accident or occurrence as contemplated by the policy. Where it is uncontroverted that the insurance company had actual notice of the claim, albeit not in the form specified in the policy, and there has been no showing that the insurance company was in any way prejudiced by receiving oral rather than written notice, this court has held that there is at least a jury question as to whether there was a waiver of the written notice requirement. See *Continental Cas. Co. v. Parker*, 161 Ga. App. 614, 617 (2) (288 SE2d 776) (1982); *Gregory v. Allstate Ins. Co.*, 134 Ga. App. 461 (214 SE2d 696) (1975). The trial court did not err in denying summary judgment on this ground.

*Judgment affirmed. Pope, C. J., and Smith, J., concur.*

DECIDED JUNE 21, 1994.

*Long, Weinberg, Ansley & Wheeler, James H. Fisher II, Laura V. Semonche*, for appellant.

*Davis & Sissel, Kenneth M. Sissel, Moffett & Henderson, John W. Henderson, Jr., D. Kevin Wheeler,* for appellees.