## S09Q0605. TRINITY OUTDOOR, LLC v. CENTRAL MUTUAL INSURANCE COMPANY.

(679 SE2d 10)

MELTON, Justice.

The United States District Court for the Northern District of Georgia has certified two questions of Georgia law to this Court pursuant to Georgia constitutional and statutory authorization and the rules of this Court. Ga. Const. of 1983, Art. VI, Sec. VI, Par. IV; OCGA § 15-2-9 (a); Rule 46 of the Supreme Court of Georgia. The questions arise in a suit brought against an insurance provider for negligent or bad faith failure to settle a claim. The first certified question asks whether an action for negligent or bad faith failure to settle a case requires that a judgment be entered against an insured in excess of the policy limits before the action can be asserted. The second certified question then queries, if a judgment in excess of policy limits is not required, what must a plaintiff show to prove negligent or bad faith failure to settle, and what damages are recoverable. Based on the facts of this case, we answer the first question in the affirmative, and, as a result, we do not reach the second question.

The facts of record show that, on August 1, 2002, a billboard owned by Trinity Outdoor, LLC fell while it was being installed on Trinity's property, killing Anthony Fowler and Joshua Fowler.[1] The billboard had been manufactured by Phoenix Outdoor, LLC, which carried a $20 million policy with Great American Alliance Insurance Company.[2] Trinity reported the accident and injuries to Central Mutual Insurance Company, with whom Trinity had a $2 million general liability policy. Central thereafter hired separate counsel for both itself and Trinity. Both sets of counsel determined that Phoenix improperly installed a bolt on the billboard apparatus that apparently broke before the accident. Trinity later filed suit against Phoenix regarding a number of defective billboards which it had purchased from them. Phoenix did not oppose the claims, and Trinity received a judgment of $724,543.

On March 19, 2004, the Fowler family sued Phoenix and Trinity, and Trinity cross-claimed against Phoenix for contribution and indemnification. Phoenix conceded liability. Both sets of outside counsel for Central and Trinity opined that they believed that Trinity was not liable to the Fowlers; however, Trinity's outside counsel believed that the Fowlers possibly could have a viable

---

[1] Lance Stofiel and Clyde Elrod were also harmed in the accident.

[2] Phoenix filed for bankruptcy after the accident, and it settled claims from Stofiel and Elrod through Great American.

premises liability claim because Trinity owned the property on which the billboard fell. On September 22, 2005, the Fowlers made a limited time demand on Central to settle the case for $2 million, the face value of its policy with Trinity. Trinity's counsel demanded that Central accept the settlement because she believed that trial could expose Trinity to a verdict over policy limits. Instead of settling at that time, however, Central filed a motion for summary judgment on Trinity's behalf, believing that there were valid and strong arguments that Trinity was not responsible for the accident. In response, the trial court ordered the parties to mediation. On the second day of mediation, the Fowlers demanded a gross amount of $14 million from all defendants. Great American offered $10 million on behalf of Phoenix, and Central offered $200,000 on behalf of Trinity, although the Fowlers demanded $1.37 million from Trinity at that time. The litigation ultimately settled for $12 million. Of that amount, Trinity, without Central's approval, agreed to contribute $954,530, comprised of the $200,000 offered by Central and $754,530 from Great American in satisfaction of Trinity's earlier judgment against Phoenix.

Central deemed Trinity's payment of the additional $754,530 to be a voluntary payment which Central was not required to pay based on clauses in the insurance contract which state: (1) Central will pay only those sums that the insured is legally obligated to pay; (2) Central has the right to defend any suit and settle any claim; (3) no insured shall make a voluntary payment without Central's prior consent; (4) an insured may only sue to "recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial"; and (5) an insured may not maintain a suit against Central unless all of the terms of the policy have been followed. On October 9, 2007, Trinity brought suit against Central in state court, claiming Central breached the insurance agreement and refused to settle with the Fowlers in bad faith, thereby violating OCGA § 33-4-6. Trinity also asserted claims for negligent failure to settle and punitive damages. On November 7, 2008, Central removed the action to federal district court and filed the pending motion for summary judgment on August 29, 2008.

1. In cases such as this, our inquiry must begin with the language of the insurance contract.

> Under Georgia law, insurance companies are generally free to set the terms of their policies as they see fit so long as they do not violate the law or judicially cognizable public policy. Thus, a carrier may agree to insure against certain risks while declining to insure against others. In construing an insurance policy, we begin, as with any contract, with the

text of the contract itself. Where the contractual language unambiguously governs the factual scenario before the court, the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured.

(Footnotes omitted.) *Reed v. Auto-Owners Ins. Co.*, 284 Ga. 286, 287 (2) (667 SE2d 90) (2008).

With regard to the settlement of claims, the policy states that Central

will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury". . . . We will have the right and duty to defend the insured against any "suit" seeking those damages. . . . We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.

The policy also mandates that "[n]o insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than first aid, without our consent." With regard to Central's ability to be sued, the policy also provides:

No person or organization has a right under this Coverage Part: a. To join us as a party or otherwise bring us into a suit asking for damages from an insured; or b. To sue us on this Coverage Part unless all of its terms have been complied with. A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial. . . . An agreed settlement means a settlement and release of liability signed by us, the insured, and the claimant or the claimant's legal representative.

Simply applying the terms of this contract as written, Trinity's claim against Central is untenable for several reasons. First, the parties agreed that any voluntary payment made by Trinity without Central's consent (other than first aid) would not be allowed under the contract. There is no question that, under the facts of this case, Trinity's payment of $754,530 was voluntary in nature. Second, the contract clearly states that Central will be liable to pay those sums that Trinity is legally obligated to pay. A voluntary payment does not constitute a legal obligation. Finally, the contract also clearly indicates that Central may be sued based on a settlement agreement to

which Central agreed or a final judgment entered after an actual trial. Trinity's payment to the Fowlers in this case does not qualify under either of these categories. Therefore, unless these policy provisions violate the law or judicially cognizable public policy, Trinity cannot seek reimbursement of its settlement with the Fowlers from Central.

Trinity contends that these provisions are unenforceable under *Southern Guaranty Ins. Co. v. Dowse*, 278 Ga. 674 (605 SE2d 27) (2004). In that case, an insured settled with the opposing party for an amount exceeding its policy limits after its insurance carrier refused to defend or indemnify the insured *at all* based on the contention that the claim in question was not covered by the policy. Thereafter, the insured brought suit against the carrier, and the carrier responded that it had no liability based on a "no settlement" clause in the policy. In considering the possible liability of the insurer under these facts, we first considered the general propriety of "no settlement" clauses in insurance contracts. We observed that

> [l]iability policies generally include provisions that prohibit an insured from settling claims without the insurer's approval. These provisions enable insurers to control the course of litigation concerning such claims, and also serve to prevent potential fraud, collusion and bad faith on the part of insureds.

Id. at 676 (1). Accordingly, it is clear that a "no settlement" clause by itself violates neither settled law nor public policy.

Next, we took note that "an insurer has a . . . duty to defend its insured against all claims covered under the policy, even those that are groundless, false, or fraudulent." (Footnote omitted.) Id. Based on this duty to defend, we then held:

> In Georgia, an insurer that denies coverage and refuses to defend an action against its insured, when it could have done so with a reservation of its rights as to coverage, waives the provisions of the policy against a settlement by the insured and becomes bound to pay the amount of any settlement within a policy's limits made in good faith, plus expenses and attorneys' fees [if the claim is actually covered by the policy].

(Punctuation and footnote omitted.) Id. In this manner, the rights of the insured to be defended against all claims under the policy are properly balanced against the insurer's rights to reserve its rights as to coverage.

Contrary to Trinity's arguments, nothing in *Dowse* makes the insurance provisions it agreed to in this case either illegal or contrary to public policy. While *Dowse* does indicate that an insurer cannot wholly abandon its insured and then attempt to shield itself with a no settlement clause if the claim was covered by the policy, that is not the situation presented here. Central provided Trinity with a defense. It did so pursuant to an insurance contract which specifically stated that Trinity had no right to make unilateral settlements or voluntary payments to third parties without Central's permission. The insurance contract also made it clear that Trinity could sue Central only about agreed upon settlements and judgments following a jury trial. This is the bargain that Trinity struck with Central, and *Dowse* cannot be used to circumvent that bargain.[3]

Accordingly, based upon the facts of this case and the terms of the insurance policy in question, Trinity cannot maintain an action against Central for bad faith failure to settle the Fowlers' claim in the absence of a jury verdict.

2. Because we find in Division 1 that, under the facts of this case and the terms of the contract of insurance, Trinity could not bring an action against Central for bad faith failure to settle a claim in the absence of an excess verdict or agreed-upon settlement, we do not reach the remaining certified question in this case.

*Certified question answered. All the Justices concur.*

DECIDED JUNE 1, 2009 —
RECONSIDERATION DENIED JUNE 29, 2009.

*Baker, Donelson, Bearman, Caldwell & Berkowitz, John Hinton IV, Kevin A. Stine, Job J. Milfort*, for appellant.

*Carlock, Copeland & Stair, David F. Root, Cheryl H. Shaw*, for appellee.

---

[3] Likewise, other cases cited by Trinity, including *Southern General Ins. Co. v. Holt*, 262 Ga. 267 (416 SE2d 274) (1992), contain no findings which would invalidate the contract entered into by Trinity.