**STATE FARM FIRE & CASUALTY COMPANY, Plaintiff,**

v.

**KING SPORTS, INC., Jui–Chen Chang, and Roger Cleveland Golf Company, Inc., Defendants.**

**Civil Action File No. 1:10–cv–131–TCB.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 7, 2011.

Douglas Lee Clayton, Maren R. Cave, Swift, Currie, McGhee & Hiers, LLP, Atlanta, GA, for Plaintiff.

Christopher S. Finnerty, Jeffrey Patterson, Nelson Mullins Riley & Scarborough, Boston, MA, M. Maran White, Matthew Brian Lerner, Nelson Mullins Riley & Scarborough, Atlanta, GA, for Defendants.

## *ORDER*

TIMOTHY C. BATTEN, SR., District Judge.

## I. Background

### A. Defendant King Sports's Insurance Policy with State Farm

King Sports is a business that advertised and sold golf clubs online. In 2001, King Sports applied to State Farm for a business liability policy. The application listed Defendant Jui–Chen "Jimmy" Chang as the owner and primary contact and listed the business's location as 1115 Cobb Parkway S, Marietta, Georgia 30060. In December 2002, State Farm issued the policy to King Sports.

### B. Lawsuits Filed against King Sports by Callaway Golf and Nike

In late 2007, State Farm received notice of two separate lawsuits filed against King Sports for alleged trademark infringement of golf clubs and accessories. First, in November 2007, Callaway Golf filed an action against King Sports in a California federal court. One month later, Nike filed suit against King Sports in an Illinois federal court. Through counsel hired by State Farm, King Sports settled both suits, paying Callaway $18,500 and Nike $17,500.[1]

### C. Representation in the Underlying Lawsuit

In June 2008, Cleveland Golf sent King Sports a cease-and-desist letter alleging that King Sports was violating Cleveland Golf's trademarks by advertising and selling golf clubs that looked like clubs manufactured by Cleveland Golf. That same month, State Farm sent King Sports a reservation-of-rights letter informing King Sports that State Farm reserved its right to not defend or indemnify King Sports under certain policy exclusions. A few days later, State Farm sent another letter to King Sports, alerting Chang that State Farm was attempting to speak with him about Cleveland's letter and requesting that Chang contact State Farm immediately to discuss the matter.

Despite Cleveland Golf's cease-and-desist letter, King Sports continued to advertise and sell the allegedly infringing products. Consequently, on August 18, 2009, Cleveland Golf filed suit against King Sports in this Court, alleging direct trademark infringement, unfair competition, false advertising, trade dress infringement, trademark dilution, trademark counterfeit-

---

1. After determining that the claims were covered by State Farm's policy with King Sports, State Farm paid the full amount of the Callaway settlement and $15,000 of the Nike settlement. King Sports was responsible for the remaining $2,500 of the Nike settlement.

ing, unfair and deceptive trade practices, violations of the Georgia anti-dilution statute, and common-law trademark infringement. This action was docketed as Civil Action File No. 1:09–cv–2254–TCB. Shortly after filing its complaint, Cleveland Golf added Chang as a party-defendant to the case.

In early November 2009, State Farm sent King Sports and Chang a letter, which informed them that (1) State Farm had hired attorney Bruce Hedrick to represent them in the underlying suit, and (2) the policy required them to cooperate with State Farm in defending Cleveland Golf's suit.

According to Hedrick, throughout the litigation King Sports and Chang completely failed to communicate with him, severely hampering his ability to defend them from the claims filed by Cleveland Golf. Hedrick testified that during the months he worked on the case, he repeatedly attempted to contact King Sports and Chang through telephone calls, text messages, email, and regular mail, but his messages largely went unreturned.

The only person affiliated with King Sports with whom Hedrick ever actually communicated was Andy Lee, an employee. At one point Lee told Hedrick that he was authorized to act on behalf of King Sports. But then he told Hedrick that he was "not in charge of this," i.e., the lawsuit, and that he was "only the one that just passed on this information to the right person." Hedrick's contact with Lee ceased entirely in February 2010 when Lee informed Hedrick that he was no longer affiliated with King Sports and requested that Hedrick no longer contact him. Following this communication, Hedrick received no further communications from Lee, Chang or King Sports.

State Farm fared no better in its attempts to contact Chang or King Sports. On nine occasions between August 20, 2009 and July 21, 2010, State Farm sent letters requesting that Chang or King Sports contact State Farm. On November 6, 2009, a State Farm claim representative visited Kings Sports's business address only to find the space vacant. Because King Sports had not supplied State Farm with an updated address and State Farm had no working telephone number for Chang, State Farm personnel searched the Internet in an attempt to obtain working contact information for Chang and King Sports. Additionally, State Farm utilized its own internal investigation division to search for names, addresses, and phone numbers for Chang and King Sports.

In January 2010, after receiving numerous extensions from the Court, Hedrick filed an answer in the underlying suit on behalf of King Sports and Chang. However, Hedrick testified that he did not feel that his answer was adequate and that its deficiencies were due to his inability to communicate with his clients. On March 9, 2010, Hedrick filed a motion to withdraw as attorney for King Sports and Chang. Hedrick later testified that he withdrew due to his clients' complete lack of cooperation.

On March 10, 2010, counsel for Cleveland Golf sent King Sports and Chang an email, in Mandarin and English, stating that a failure to cooperate and communicate with Hedrick could jeopardize insurance coverage under the policy issued by State Farm. In the email, counsel for Cleveland Golf also included a message from Hedrick that informed King Sports and Chang that if they wanted Hedrick to represent them they needed to contact him immediately. The email also supplied all of Hedrick's contact information, including his email address, direct office phone number, general office phone number, and personal cell phone number. Neither Hedrick nor State Farm heard from Lee, Chang or

King Sports in response to the March 10 email. On March 30, 2010, the Court granted Hedrick's motion to withdraw.[2]

### D. Settlement of the Underlying Lawsuit

Although Hedrick and State Farm did not have further communications with Lee, Cleveland Golf did. According to Lee's deposition, Cleveland Golf told him that if he would sign a settlement agreement with Cleveland Golf, then Cleveland Golf would stop contacting King Sports.

After learning about the settlement discussions between Cleveland Golf and King Sports/Chang, on June 25, 2010 State Farm sent King Sports/Chang a letter reiterating its request that they contact State Farm immediately and informing them that the policy expressly prohibited King Sports from settling with Cleveland Golf. The letter also quoted the relevant portion of the policy: "Except at their own cost, no insureds will voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent." Although Lee testified that he informed "NG," one of King Sports's partners/shareholders, that NG should contact State Farm regarding the settlement, no one from King Sports contacted State Farm.

On July 7, 2010, King Sports and Cleveland Golf entered into a settlement agreement executed by Lee as "owner" of King Sports. In the agreement, King Sports consented to a judgment of $1,000,000, a decidedly larger sum than Cleveland Golf had negotiated in prior settlement agreements with other alleged infringers in similar cases. In fact, over the prior ten years, Cleveland Golf settled approximately fifty cases against alleged infringers; in none of those settlements was the amount to be paid more than $10,000. As part of the settlement agreement, King Sports assigned to Cleveland Golf any claims that King Sports might have against State Farm under the policy.

Despite knowing that State Farm's policy with King Sports required State Farm's approval of any settlement, Cleveland Golf did not inform State Farm of the agreement, much less obtain State Farm's consent. On July 15, 2010, in case No. 1:09–cv–2254–TCB, in accordance with the settlement agreement the Court entered a consent judgment in favor of Cleveland Golf and against King Sports in the amount of $1,000,000.

### E. The Current Lawsuit

On January 15, 2010—six months before King Sports and Cleveland Golf settled their case in July 2010—State Farm filed a complaint for a declaratory judgment against King Sports and Cleveland Golf, seeking a declaration that State Farm's policy does not provide King Sports and/or Chang coverage for any liability incurred by King Sports (1) that does not arise from an "occurrence" as defined by the policy, or (2) for any claims encompassed within the policy's exclusions. Furthermore, State Farm seeks a declaration that it owed no coverage whatsoever to King Sports and/or Chang because both failed to abide by, satisfy, comply with or fulfill the duties imposed on them pursuant to the policy's "general conditions."

As assignee of King Sports, Cleveland Golf asserted a counterclaim against State Farm for breach of the duty to defend and indemnify King Sports. Cleveland Golf also brought the same claim on behalf of itself as a third-party beneficiary to the policy.

---

2. In its order, the Court "explicitly state[d] that it [was] making no ruling or finding as to Defendants' cooperation or non-cooperation with counsel and that any issues regarding cooperation or non-cooperation with counsel [were] not a basis for [that] Order."

Currently before the Court are three motions by State Farm: (1) for summary judgment on its declaratory judgment action, (2) for summary judgment on Cleveland Golf's counterclaim, and (3) to exclude Cleveland Golf's expert, William Feldhaus.

## II. Analysis

### A. Legal Standard

Summary judgment is proper when no genuine issue as to any material fact is present and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). The movant carries the initial burden and must show that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). The nonmovant is then required to "go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions, and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Resolving all doubts in favor of the nonmoving party, the Court must determine "whether a fair-minded jury could return a verdict for the plaintiff upon the evidence presented." *Id.*

### B. Summary Judgment on State Farm's Declaratory Judgment Action

State Farm argues that it is entitled to summary judgment on its declaratory judgment action because (1) the policy excludes Cleveland Golf's claim against King Sports in the underlying suit, and (2) King Sports and Chang failed to cooperate with State Farm and Hedrick in the investigation and defense of the underlying lawsuit.

#### 1. Governing Law

This case is before the Court on diversity jurisdiction. In a diversity action, the federal court must apply the substantive law of the forum state in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Giddens v. Equitable Life Assurance Soc'y*, 445 F.3d 1286, 1297 (11th Cir.2006). The parties have agreed that Georgia law governs the instant dispute, and the Court will apply Georgia law to interpret the contract.

"Insurance is a matter of contract and rules governing construction of contracts are applicable to insurance contracts." *Wilson v. S. Gen. Ins. Co.*, 180 Ga.App. 589, 590, 349 S.E.2d 544, 545 (1986). Under Georgia law, "terms in an insurance policy are given their ordinary and customary meaning." *Stagl v. Assurance Co. of Am.*, 245 Ga.App. 8, 10, 539 S.E.2d 173, 175 (2000).

#### 2. The Policy's Exclusion of Willful Infliction of Advertising or Personal Injuries

Under section 16(a) of the policy, coverage is excluded for any personal injury or advertising injury "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict personal injury or advertising injury." The policy defines an advertising injury as "injury arising out of" an offense including "infringing upon another's copyright, trade dress or slogan in [King Sports's] advertisement." State Farm contends that this policy exclusion applies to Cleveland Golf's claim in

the underlying suit because King Sports knowingly violated Cleveland Golf's trademarks.

■ As an initial matter, the Court addresses Cleveland Golf's argument that State Farm is estopped from disclaiming coverage under this policy exclusion because it failed to properly reserve its rights. This argument is unfounded. State Farm sent a letter to King Sports on July 2, 2008 reserving its rights to refuse to defend or indemnify King Sports based on the policy provisions listed in the letter, which included policy exclusion 16(a). This letter was clearly a sufficient reservation of State Farm's rights.

■ The Court now turns to State Farm's claim that King Sports and Chang acted willfully in violating Cleveland Golf's trademarks in the underlying suit. In support of its contention, State Farm makes three arguments. First, State Farm points to the following portion of Lee's deposition testimony:

Q: So did King Sport [sic] know it was selling imitation Cleveland Golf merchandise?

A: Yes, they know [sic].

Q: And did they know that the entire time that you worked for the company?

A: Yes.

Lee's testimony does not definitively show that King Sports knew that its actions would result in an advertising injury to Cleveland Golf. In that same portion of the deposition, Lee's answers regarding whether King Sports knew it was infringing Cleveland Golf's trademarks are far from clear:

Q: Did King Sport [sic] know that the sale of imitation golf clubs could violate the trademark of Cleveland Golf?

A: I believe that a normal person all know about his knowledge on that [sic].

Q: So did you know that selling imitation golf clubs of Cleveland Golf violated their trademarks?

A: As of my own duty, that I only received these mails and I send out orders. Anything that's to do with these [sic] merchandise, that is the owner's business.

This wonderfully imprecise testimony does not support State Farm's contention that as a matter of law King Sports knew that its actions of selling infringing products would result in a violation of Cleveland Golf's trademark rights. Lee provides no direct answers to the questions, and to say the least, it is difficult to understand what he believed King Sports knew. Furthermore, State Farm's coverage ended on December 14, 2008, but Lee did not start working at King Sports until February 2009. Thus, Lee had no knowledge for the relevant time period, i.e., the policy's coverage period.

State Farm also contends that the two lawsuits by Callaway and Nike placed King Sports on notice that its conduct of selling and advertising similar or confusing products violated the rights of others. In response, Cleveland Golf argues that King Sports could not have been put on notice by its infringing activity against Callaway and Nike because its same activity against Cleveland Golf took place around the same time. However, Cleveland Golf fails to accurately characterize the timeline. Callaway and Nike filed suit against King Sports in November and December of 2007 respectively, whereas Cleveland Golf did not send its letter to King Sports alleging trademark violations until June 2008 and did not file suit until August 2008. Thus, because the Nike and Callaway suits were filed several months before the Cleveland

Golf suit, it is not a "factual impossibility," as Cleveland Golf argues, that the Callaway and Nike lawsuits could have put King Sports on notice that it was engaging in activity that constituted infringement.

Nonetheless, State Farm's argument fails. First, State Farm has not provided sufficient information for the Court to conclude that King Sports's activities involving Nike and Callaway were so similar to its activities involving Cleveland Golf that King Sports should have known that its actions regarding Cleveland Golf constituted infringement. Moreover, since the Nike and Callaway cases settled and no verdict was entered against them as to any specific claim, it is possible that King Sports was not aware of which of its activities actually constituted infringement.

Second, although State Farm cites several cases where courts have applied similar advertising-injury exclusions,[3] State Farm has not cited any authority to support its proposition that an infringement lawsuit by one business against an insured constitutes notice to the insured that the same type of activity constitutes infringement against another business. While it is conceivable that an insured might be put on such notice as a result of other litigation, this Court cannot hold that as a matter of law the pendency of the Nike and Callaway litigation demands a finding that King Sports knowingly violated Cleveland Golf's trademarks.

Finally, State Farm offers as evidence of King Sports's knowledge the testimony of Stephen Gingrich, vice-president of global legal enforcement for Cleveland Golf. Gingrich testified that based on the initial cease-and-desist letter that Cleveland Golf sent King Sports in June 2008 and the email communications Cleveland Golf sent King Sports in October and November 2009, he was "quite confident" that King Sports knew that it was violating Cleveland Golf's rights. This evidence does not support State Farm's contention. State Farm does not offer a copy of the cease-and-desist letter, does not identify the address to which it was sent, and does not offer any proof that King Sports ever received it. For these reasons, Gingrich's opinion is merely speculative. As for the emails, because they refer to King Sports's knowledge outside the coverage period, they are irrelevant.

Thus, State Farm has not offered sufficient proof that as a matter of law King Sports willfully violated Cleveland Golf's trademarks in its advertising.

### 3. The Policy Condition Requiring King Sports and Chang to Cooperate in the Defense and Investigation of the Underlying Suit

Under the policy's general conditions, King Sports was required to "cooperate with [State Farm] in the investigation, settlement or defense" of Cleveland Golf's suit. The parties generally agree as to the law governing King Sports's duty to cooperate, but disagree as to its application here. Under Georgia law,

> The insured is obligated to assist in good faith in making every legitimate defense to a suit for damages. If he refuses to give the information which the insurer needs to make the defense, or absents himself so that his testimony at the trial cannot be obtained, recovery on the policy should be denied, if the

---

**3.** Furthermore, both parties cite several cases that consider when a policy exclusion like the one at issue will apply: (1) as soon a plaintiff *alleges* that the insured acted willfully, or (2) once a plaintiff actually *proves* willfulness. *See, e.g., Orlando Nightclub Enters., Inc. v.* *James River Ins. Co.*, No. 6:07–cv–1121–Orl–19KRS, 2007 WL 4247875, at *6–9 (M.D.Fla. Nov. 30, 2007). Because State Farm only argues that the policy exclusion applies if it *proves* that King Sports acted willfully, these cases are inapplicable.

insurer acts with good faith and diligence.

*H.Y. Akers & Sons, Inc. v. St. Louis Fire & Marine Ins. Co.*, 120 Ga.App. 800, 803–04, 172 S.E.2d 355, 359 (1969); *see also Wolverine Ins. Co. v. Sorrough*, 122 Ga. App. 556, 557, 177 S.E.2d 819, 820 (1970) ("The cooperation clause in a liability insurance policy is a material condition of liability, and a breach of it by one who is insured ... relieves the insurer of any obligation to defend a damage action against the insured."). Thus, to determine whether King Sports breached its duty to cooperate, the Court must examine whether (1) King Sports cooperated by providing State Farm with information needed to make its defense, and (2) King Sports acted with good faith and diligence.

### a. King Sport's Cooperation in the Underlying Suit

■ King Sports had a duty to cooperate in the investigation of the underlying suit by assisting in securing evidence and "making full, fair complete and truthful disclosures of the facts" known to it when called upon to do so. *St. Paul Fire & Marine Ins. Co. v. Gordon*, 116 Ga.App. 658, 660, 158 S.E.2d 278, 279 (1967); *see also S. Mut. Ins. Co. v. Mason*, 213 Ga. App. 584, 588, 445 S.E.2d 569, 572 (1994) ("It is well established that the insured has a duty to cooperate with his insurer in all aspects of a lawsuit and to make a full, fair, complete, and truthful disclosure of all facts relating to the [incident]."). State Farm argues that the undisputed evidence demonstrates that Chang and King Sports failed to meet their duty to cooperate as mandated by the policy. The Court agrees.

■ To begin with, Chang and King Sports had no substantive communication with State Farm or Hedrick regarding the lawsuit despite Hedrick's multiple attempts to gain information. Hedrick testified that he repeatedly attempted to communicate with Chang and King Sports via telephone, text message, email and regular mail. Hedrick even went so far as having Cleveland Golf's counsel send King Sports an email on his behalf. However, at no time was Hedrick able to talk to Chang—the person listed as the business owner on the policy—or anyone who provided him with substantive information regarding the suit. The only person Hedrick was able to communicate with was Lee, who when asked in his deposition whether he felt that he had cooperated with Hedrick, answered "no."

The failure to cooperate must be material as opposed to technical or inconsequential. *Mason*, 213 Ga.App. at 588, 445 S.E.2d at 572. Due to Chang and King Sports's lack of cooperation, Hedrick could not gather information from Chang and King Sports regarding the infringing products or advertisements, discuss a settlement offer from Cleveland Golf, or file mandatory initial disclosures. Chang's and King Sports's noncooperation ultimately culminated in Hedrick's withdrawal as counsel. Because Chang's and King Sports's failure to cooperate prevented Hedrick from properly representing them in the underlying suit, their failure was material.

Nevertheless, Cleveland Golf insists that State Farm must show a "total failure" to cooperate in order to obtain summary judgment and that there is evidence that King Sports provided at least some cooperation. While it is true that where "the insured cooperates to some degree or provides an explanation for its noncompliance, a fact question is presented for resolution by a jury," *Diamonds & Denims, Inc. v. First of Ga. Ins. Co.*, 203 Ga.App. 681, 683, 417 S.E.2d 440, 442 (1992), the undisputed fact is that although Lee had some communication with Hedrick, King Sports and Chang provided Hedrick with no *substan-*

*tive* information—and thus, no actual cooperation—in the underlying suit.

Cleveland Golf cites multiple instances of alleged cooperation by King Sports. It first points to Hedrick's testimony that he spoke with Lee twenty-five to fifty times. However, none of these conversations related to the substantive issues in the case. For example, Hedrick testified that he told Lee that he needed to talk to the person in charge of the company. Lee testified that in response to such requests by Hedrick, Lee replied, "Basically, I was there, that I was not in charge of this—in fact, I am only the one that just passed on this information to the right person. So I didn't get any answer back so I can't respond to Mr. Hedrick." Cleveland Golf repeatedly contends that Hedrick never asked Lee any substantive questions and that is the reason that Lee did not respond. This is a gross mischaracterization of Lee's testimony. Lee testified that Hedrick did ask him substantive questions, but that Lee provided no substantive answers. Lee repeatedly states that his role was to "just report it, what was presented."

Cleveland Golf next argues that Hedrick actually testified that Lee cooperated with the defense of the case. But Cleveland Golf again mischaracterizes Hedrick's testimony. Hedrick testified, "There was some cooperation in terms of *communication* with Mr. Lee. In other words, he would answer some calls. He would respond. *He appeared to be trying to forward information and that sort of thing.*" (Emphasis added.) While Hedrick testified that Lee communicated with him, he also made clear that Lee never provided any substantive information regarding the case. Thus, the fact that Lee technically "communicated" with Hedrick, standing alone, does not support the fact that Lee *cooperated* with him. *See, e.g., KHD Deutz of Am. Corp. v. Utica Mut. Ins. Co.,* 220 Ga.App. 194, 196, 469 S.E.2d 336, 339

(1996) (insured failed to cooperate even though he had spoken with insurer's attorney and eventually executed non-waiver agreement); *Allstate Ins. Co. v. Hamler,* 247 Ga.App. 574, 576, 545 S.E.2d 12, 14 (2001) (insured breached insurance contract by failing to provide necessary information, even though she provided other information).

To support its argument that King Sports cooperated, Cleveland Golf also points to an entry in State Farm's service record for the claim. In a notation dated November 23, 2009, Jill Reina, a State Farm team manager, wrote, "The PH has recently begun cooperating with D/A." Since the abbreviations are not explained, the Court will assume that "PH" refers to King Sports as the policyholder and "D/A" refers to defense attorney Hedrick. Even so, this evidence does not support Cleveland Golf's argument. Even if King Sports was "cooperating" in some capacity on November 23, 2009, this does not change the fact that King Sports never provided Hedrick with any substantive information regarding the underlying suit and in February 2010 ceased all communications with Hedrick. King Sports and Chang had a duty to cooperate throughout the course of the entire suit, and the undisputed evidence shows that they utterly failed to do so.

Contrary to Cleveland Golf's assertion that any level of cooperation raises a question of fact for the jury, "Georgia courts have awarded summary judgment to defendants even where the plaintiff did cooperate with the defendant's investigation by providing some relevant documentation." *S. Realty Mgmt., Inc. v. Aspen Specialty Ins.,* No. 1:08–cv–572–JOF, 2010 WL 966426, at *4 n. 12 (N.D.Ga. Mar. 12, 2010). Here, the undisputed evidence shows that King Sports provided Hedrick

with no information of any kind, relevant or otherwise.

■ Finally, to succeed on its claim State Farm must also show that King Sports acted willfully and fraudulently. *Mason,* 213 Ga.App. at 588, 445 S.E.2d at 572. State Farm has done so. In February 2010, Lee told Hedrick that he was no longer affiliated with King Sports and asked him to no longer contact him. Despite Lee's representations to Hedrick, he continued to communicate with Cleveland Golf through emails and phone calls. Lee testified that he knew State Farm should be contacted prior to entering into a settlement, yet in order to get Cleveland Golf to "stop harassing" King Sports, he signed a settlement agreement without ever having contacted State Farm or obtaining its consent. King Sports's and Chang's failure to cooperate with Hedrick, coupled with Lee's unilateral execution of a settlement agreement with Cleveland Golf, constitutes a willful and fraudulent failure to cooperate as a matter of law.

#### b. State Farm's Good Faith and Diligence

■ To prevail on summary judgment, State Farm must also show that it acted diligently and in good faith in securing information from King Sports and Chang. *Diamonds & Denims,* 203 Ga.App. at 681, 417 S.E.2d at 442 ("[T]he insured's failure to act with diligence and good faith in securing the necessary information also will preclude the grant of summary judgment to the insurer on the issue of the insured's compliance with policy prerequisites."). Georgia law requires that an insurer make a reasonable effort to obtain an insured's cooperation before it can be fully relieved of its duties under the policy. *Wolverine Ins.,* 122 Ga.App. at 557, 177 S.E.2d at 820.

■ State Farm made extensive efforts to reach Chang and King Sports. On June 25, 2008, State Farm sent Chang a letter informing him that it was attempting to reach him regarding Cleveland Golf's cease-and-desist letter. On August 20 and September 2, 2009, State Farm sent King Sports and Chang letters requesting that they contact State Farm regarding the underlying suit. On November 6, 2009, State Farm sent Chang and King Sports a letter alerting them that Hedrick would be representing them in the Cleveland Golf litigation. That same day, a State Farm representative went to King Sports's business address, only to find the space empty. On November 12, 2009, State Farm sent King Sports and Chang a letter informing them that Hedrick was trying to reach them and reminding them of their duty to cooperate with Hedrick. On February 4 and 19, 2010, State Farm sent letters requesting that King Sports and Chang contact State Farm so that it could obtain a recorded statement from them regarding the allegations in the underlying suit. On March 25, State Farm sent yet another letter informing King Sports and Chang that it was "imperative" that they cooperate with Hedrick. In an April 1, 2010 letter, State Farm again asked King Sports and Chang to contact it regarding obtaining a recorded statement. On April 5, 2010, State Farm sent King Sports and Chang a letter informing them of Hedrick's withdrawal and again asking King Sports and Chang to contact it. Following Hedrick's withdrawal, State Farm sent seven additional letters, dated April 16, May 26, June 22, June 25, July 20, October 20 and October 22, 2010, all of which requested that King Sports and Chang contact State Farm.

In addition to the letters, State Farm made multiple attempts to reach Chang and King Sports via telephone, including telephone calls on August 20 and December 10, 2009, and April 20 and May 26, 2010. Moreover, on May 13, 2010, State

Farm agent Casaundra Wilkins made a visit to a new address for Chang on Roswell Road. The woman who answered the door told Wilkins that Chang did not live there but did keep some of his stuff there. Wilkins then left copies of several letters with the woman, including a cooperation letter and Hedrick's letter of withdrawal.

Due to the difficulties State Farm encountered in reaching Chang and King Sports, State Farm searched the Internet to find working contact information for them. State Farm also utilized its own internal investigation division to search for names, addresses and phone numbers.

State Farm's efforts resulted in only three responses. First, in a phone call on September 16, 2009, a man initially identified himself as Jimmy Chang. He stated that he had received the contact letter from State Farm and wanted to know what it was in reference to. When asked if he was the owner of King Sports, he said that he was not and that Jimmy Chang was out of the country but that he might be able to get a message to him. Second, in another phone call on July 17, 2010, a man identifying himself as Jimmy Chang's father called Reina and told her that Chang had nothing to do with the lawsuit. Third, on August 12, 2010, State Farm received an email from "Jimmy Chang"; however, the man claimed that he was not the same Jimmy Chang as the one named in the lawsuit and asked that State Farm not contact him any further.

Despite State Farm's record of attempted contact with King Sports and Chang, Cleveland Golf nonetheless contends that State Farm was not diligent because it only contacted King Sports twice before it decided to pursue a non-cooperation defense. Furthermore, Cleveland Golf argues that State Farm did not act in good faith because it purposefully manufactured a non-cooperation defense in order to evade its obligations. According to Cleve-

land Golf, the record is replete with evidence from which a jury could reasonably conclude that State Farm never had any intention of providing a good faith defense to King Sports and Chang and that the defense it did create was nothing more than a sham intended to defeat coverage on a non-cooperation theory.

Central to Cleveland Golf's "sham defense" theory is its contention that on November 2, 2009, after only two attempts to contact King Sports, State Farm concluded that King Sports was not cooperating. To support this claim, Cleveland Golf offers a voicemail from Hedrick to Cleveland Golf's defense counsel Matthew Lerner. In the voicemail, left November 3, 2009, Hedrick stated the following:

> I think State Farm had made a compromise settlement offer to your client at some point, and was sort of in a window where, from what State Farm has told me, they're going to pay that but about to just move forward with the dec action because the insured is not cooperating with them and unfortunately, at the moment, not cooperating with me to enable me to file an answer. I think an answer is due here in a couple of days so I'll have to figure out how to deal with that situation. But to the extent that your client had any settlement interest relative to State Farm, now would be the time, it appears. If you could give me a call either way, I would greatly appreciate it.

Cleveland Golf argues that from this voicemail, it is obvious that Hedrick knew that State Farm planned to file a declaratory judgment action and raise the defense of failure to cooperate.

Assuming that the phrase "just about to just move forward with the dec action" means that State Farm intended to file a declaratory judgment action, this does not refute State Farm's good faith and dili-

gence in its efforts to contact King Sports and Chang. For one thing, State Farm did not actually file its declaratory judgment action until over three months later, in January 2010, after State Farm had made additional efforts to contact King Sports, including additional phone calls, letters, and a visit to King Sports's address. Moreover, the evidence shows that State Farm had good reason to believe in November 2009 that King Sports would be uncooperative. State Farm received no response to its June 2008 letters, which had asked King and Chang Sports to contact it regarding Cleveland Golf's cease-and-desist letter, and Jimmy Chang's son Ike Chang, who had previously cooperated in the Nike and Callaway cases, stated in June 2008 that he was unwilling to assist in the Cleveland matter. Furthermore, when State Farm attempted to call King Sports on August 20, 2009, the telephone number was disconnected. Based on King Sports's complete lack of cooperation up until that point, it is not surprising that State Farm told Hedrick in November 2009 that it was experiencing problems with cooperation.

Cleveland Golf also argues that a discrepancy exists between Hedrick and Reina's deposition testimony regarding whether Reina told Hedrick in November 2009 that State Farm was planning to file a declaratory judgment action. As in several other instances throughout its response motion, Cleveland Golf mischaracterizes Hedrick's testimony. Hedrick testified that he did not recall having a conversation with anyone about a potential declaratory judgment action in early November, but that if he had had such a conversation, it would have likely been with Reina. Contrary to Cleveland Golf's assertions, Hedrick never stated that he and Reina actually had any such conversation. While Hedrick obviously learned from someone about the anticipated declaratory judgment action, Hedrick never

identifies the source of that information. Thus, Reina's testimony that she never talked to Hedrick about a potential declaratory judgment action in November 2009 does not conflict with Hedrick's testimony.

Even if there is a discrepancy between Hedrick and Reina's testimony, Cleveland Golf fails to explain why such a discrepancy would be material to the issue of State Farm's good faith. As explained above, based on the cooperation problems that State Farm had already experienced with King Sports and Chang up to that point, it only seems logical that State Farm would already have contemplated filing a declaratory judgment action against King Sports and Chang.

Equally unavailing is Cleveland Golf's argument that State Farm expert Peter Kensicki's testimony actually proves the existence of a plot to deny coverage. Dr. Kensicki testified that based on Hedrick's voicemail and Hedrick's testimony, it appeared that State Farm believed there were issues regarding cooperation at the end of October 2009. However, because the evidence upon which Dr. Kensicki relies in reaching his conclusion does not negate State Farm's good faith, Dr. Kensicki's testimony in no way proves that State Farm concocted a non-cooperation defense.

Furthermore, Cleveland Golf's contention that State Farm acted in bad faith because it did not alert Hedrick that Chang only spoke Mandarin is meritless. The policy was written in English, and Lee, who represented to Hedrick that he was authorized to communicate on King Sports's behalf, spoke English and communicated with Hedrick in English several times. In fact, Cleveland Golf asserts that "Lee had a strong understanding of the factual allegations in Cleveland's complaint." (Cleveland Golf Resp. Br. at 14.)

Moreover, Hedrick testified that he had about five correspondences translated into Mandarin and would have had more translated had King Sports or Chang requested translated correspondence. Most importantly, Cleveland Golf has offered no authority to support its argument that Hedrick and State Farm were required to provide translation services when the insurance policy was written in English and the insured was a business located in the United States.[4]

As further evidence of State Farm's alleged bad-faith scheme, Cleveland Golf argues that State Farm failed to "split the file" in the underlying case as it had done in the Nike and Callaway claims. According to State Farm employees Reina and Williams, an insurance file should be split to ensure that information received in defense of the case is not used to invalidate coverage. In the underlying suit, State Farm did not split the file until mid-December 2009. Cleveland Golf argues that by not immediately splitting the file, State Farm allowed information obtained in the defense of Chang and King Sports to be used against them in the coverage action. Although it is clear that State Farm deviated from its own policies, Cleveland Golf fails to articulate exactly how State Farm's decision to wait to split the file shows bad faith. Cleveland Golf does not identify what sensitive information Williams was able to gain and use against King Sports and Chang due to her handling of the entire file. Moreover, Cleveland Golf cites no authority to support its argument that State Farm even had a duty to split the file.

Finally, Cleveland Golf argues that State Farm actively withheld key information from Hedrick, thereby hindering his ability to defend King Sports and Chang. Specifically, Cleveland Golf contends that State Farm did not share King Sports's recorded statement and other written discovery from the Callaway and Nike cases. Although Hedrick testified that this information would have been helpful, Cleveland Golf cites no authority[5] contending that State Farm was required to provide Hedrick with information from a different suit involving a different defendant.

In fact, the only case law Cleveland Golf cites in support of its claim that State Farm did not act in good faith is *H.Y. Akers & Sons, Inc. v. St. Louis Fire & Marine Insurance Co.*, 120 Ga.App. 800, 172 S.E.2d 355 (1969). In citing the Georgia Court of Appeals, Cleveland Golf quotes the following: "Of course it must go without saying that no court will countenance a conspiracy ... to bring about the insured's breach so that the insurer will be relieved of liability." However, the full quotation reads as follows:

> Of course it must go without saying that no court will countenance a conspiracy *between the insured and the insurer* to bring about the insured's breach so that the insurer will be relieved of liability, *nor will it countenance a conspiracy between the insured and the claimant* to deprive the insured of a fair trial by arranging the insured's absence from the trial to deprive the defense of an opportunity to present material evidence or to rebut evidence, resulting in an

---

4. A review of State Farm's motion to exclude Cleveland Golf's expert William Feldhaus shows that Feldhaus does offer opinions regarding State Farm's duty to provide translation services to Chang and King Sports. However, nowhere in its motion for summary judgment does Cleveland Golf cite to Feldhaus's opinion for support of its argument.

5. Again, although Feldhaus expressed an opinion regarding State Farm's responsibility to supply Hedrick with the discovery files from the Callaway and Nike suits, Cleveland Golf does not rely on Feldhaus's opinions in its brief in opposition to State Farm's motion for summary judgment.

unjustified verdict which the company must pay.

*Id.* at 803, 172 S.E.2d at 359 n. 1 (emphasis added). Cleveland Golf conveniently omits the phrase "between the inured and the insurer" obviously because there is no conspiracy alleged between State Farm and King Sports. If there were a conspiracy in this case, it seems to have been between the insured and the claimant, i.e., King Sports and Cleveland Golf, since Lee represented to Hedrick that he was no longer affiliated with King Sports and asked Hedrick to stop calling him, only to later enter into a settlement agreement on King Sports's behalf with Cleveland Golf.

The Court finds that no reasonable juror could conclude that King Sports and Chang did not breach their duty to cooperate in the defense of the underlying suit. Thus, due to their non-cooperation and the fact that State Farm made diligent, good faith efforts to gain their cooperation, as a matter of law State Farm owed King Sports and Chang no duty to defend them in the underlying suit.

## C. Summary Judgment on Cleveland Golf's Counterclaim

Because the Court finds that State Farm owed King Sports and Chang no coverage due to their breach of the policy's cooperation clause, the Court will also grant summary judgment to State Farm on Cleveland Golf's counterclaim. As explained above, the Court finds that King Sports's breach of the policy's cooperation clause relieved State Farm of its duty to defend and indemnify King Sports and Chang in the underlying suit.

However, even if the Court were to find that King Sports and Chang did not breach the policy's cooperation clause, summary judgment would still be appropriate because (1) in violation of the policy, King Sports voluntarily assumed obligations in the settlement and assigned its

rights without State Farm's knowledge or consent, and (2) the policy only allows the insured to bring suit under the policy where all policy conditions have been complied with and there has been an "agreed settlement" or judgment after a trial.

### 1. The Settlement and Assignment-of-Rights Clauses

 Even if the policy had still been in effect, King Sports's and Chang's multiple violations of other policy provisions would discharge State Farm's obligations under the policy. First, in reaching the settlement with Cleveland Golf, King Sports and Chang failed to notify State Farm of the settlement and did not obtain State Farm's approval. The policy required that King Sports "immediately send [State Farm] copies of any demands, notices, summonses or legal papers received in connection with the claim or suit." The policy also provided that "[e]xcept at their own cost, no insureds will voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without [State Farm's] consent." In Georgia, such provisions are enforceable. *See, e.g., Trinity Outdoor, LLC v. Cent. Mut. Ins. Co.,* 285 Ga. 583, 586, 679 S.E.2d 10, 13 (2009) (refusing to require insurer to pay settlement when insured failed to obtain insurer's consent as required under their insurance policy); *Canadyne–Ga. Corp. v. Cont'l Ins. Co.,* No. 1:91–cv–130–GET, 1992 WL 547722, at *10–11 (N.D.Ga. May 1, 1992) (insured's decision not to notify insurer of voluntary settlement "denied the defendants the ability to protect their own interest" and therefore relieved the insurer of any responsibility for the settlement).

 Second, King Sports's attempt to assign its rights to Cleveland Golf was in direct conflict with the policy, which provided that King Sports's "rights and duties under this policy may not be transferred without [State Farm's] written consent ex-

cept in the case of death of an individual named insured." "Georgia law expressly provides that insurers may limit the assignability of rights under policies through the use of non-assignability clauses." *Williams v. Mayflower Ins. Co.*, 238 Ga. App. 581, 583, 519 S.E.2d 506, 508 (1999) (citing O.C.G.A. § 33–24–17).

Cleveland Golf does not dispute the fact that King Sports and Chang violated these policy provisions by failing to inform State Farm of the settlement and failing to obtain State Farm's consent to the settlement, including the assignment. However, Cleveland Golf maintains that due to State Farm's provision of a "sham" defense through Hedrick and then its failure to appoint new counsel after Hedrick's withdrawal, State Farm has waived its right to invoke the settlement and assignment-of-rights provisions.

As the Georgia Supreme Court held in *Southern Guaranty Insurance Co. v. Dowse*, 278 Ga. 674, 676, 605 S.E.2d 27, 29 (2004), where an insurer "refuses to indemnify or defend based upon a belief that a claim against its insured is excluded from a policy's scope of coverage," it "does so at its peril, and if the insurer guesses wrong, it must bear the consequences, legal or otherwise, of its breach of contract." In *Trinity Outdoor, LLC*, 285 Ga. at 586, 679 S.E.2d at 13, the court clarified the facts of *Dowse* by explaining, "In [*Dowse* ], an insured settled with the opposing party for an amount exceeding its policy limits after its insurance carrier refused to defend or indemnify the insured *at all* based on the contention that the claim in question was not covered by the policy." Thus, had State Farm refused to offer any defense to Chang and King Sports due to its belief that the policy excluded the claims at issue, State Farm would have waived *its* ability to enforce the policy's settlement and assignment provisions. *See id.* ("[A]n insurer that denies coverage and refuses to defend an action against its insured, when it could have done so with a reservation of its rights as to coverage, waives the provisions of the policy against a settlement by the insured . . . .").

 Here, contrary to *Dowse*, State Farm did not absolutely refuse to defend King Sports or Chang and State Farm's failure to appoint new counsel after Hedrick withdrew was not based on "its belief that the policy excluded the claims at issue." Instead, in compliance with Georgia law, State Farm sent King Sports a reservation-of-rights letter and then assigned an experienced attorney to their defense. Hedrick withdrew only because of King Sports's and Chang's complete lack of cooperation.

Following Hedrick's withdrawal, State Farm was not required to hire replacement counsel. Shortly before Hedrick's withdrawal, Lee told Hedrick to no longer contact him, thus making it clear that King Sports had no intention of further communication with Hedrick. Even after Hedrick filed his withdrawal, he tried again to reach out to Chang and King Sports by including a message to them in the email sent by Cleveland Golf, but neither responded. Additionally, after Hedrick's withdrawal, State Farm continued to send letters and attempt to make contact with Chang and King Sports to no avail. Based on the complete lack of cooperation and communication from Chang and King Sports, it would have been an exercise in futility for State Farm to assign a new attorney to the case. Because "[t]he law does not require a useless act," *Tendler v. Thompson*, 256 Ga. 633, 634, 352 S.E.2d 388, 389 (1987), State Farm had no obligation to hire new counsel for Chang and King Sports following Hedrick's withdrawal.

### 2. The Right–to–Bring Suit Clause

 The policy also provided that "[n]o person or organization has a right under

this policy ... to sue [State Farm] on this policy unless all of this policy's terms have been fully complied with." As explained above, Chang and King Sports breached the policy's cooperation, settlement, and assignment clauses. Furthermore, the policy provides that no "person or organization may sue [State Farm] to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial.... An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's representative." Here, there was no "agreed settlement" and no actual trial because King Sports and Chang entered into a voluntary settlement without State Farm's knowledge or consent. Thus, the settlement is not enforceable against State Farm.

Accordingly, the Court will grant State Farm summary judgment as to Cleveland Golf's counterclaims.

### D. State Farm's Motion to Exclude Cleveland Golf's Expert

In light of the Court's holdings granting summary judgment in favor of State Farm, the Court need not determine the admissibility of Cleveland Golf's expert at trial.

### III. Conclusion

For the reasons set forth above, the Court GRANTS State Farm's motions for summary judgment on its declaratory judgment action [106] and on Cleveland Golf's counterclaims [107] and DENIES AS MOOT State Farm's motion to exclude Cleveland Golf's expert, William Feldhaus [105].