### A94A2576. HAMMOND v. BANK OF NEWNAN.
(456 SE2d 678)

RUFFIN, Judge.

Harold Hammond sued the Bank of Newnan ("the Bank") for money damages, alleging that the Bank failed to honor his option to purchase 5,000 shares of Bank stock at $20 per share which was extended to him when he became its president in 1986. The Bank moved for summary judgment and the trial court granted the motion.

The evidence, viewed in a light most favorable to Hammond, shows that in 1986 Hammond signed an employment agreement with the Bank which contained a "Contemplated Benefits" section. That section stated that "[a]fter the [Bank] is authorized to do business, the new employment agreement with Hammond shall . . . include provisions for stock options. . . ." Hammond requested the option of purchasing 5,000 shares of stock at $20 per share as part of the agreement. An August 25, 1986 letter regarding the employment contract from a member of the Bank's Board of Directors states "I do . . . feel [Hammond's] request [for the stock option] is reasonable, and that the Board should . . . agree that we will establish such a plan once the bank is in operation, and that the plan will . . . provide that Harold will be extended these options, to-wit: to purchase 5,000 shares of stock at $20 per share. . . ."

On August 28, 1992, Hammond wrote a letter to the Board stating that he wished to exercise his option to purchase 5,000 shares of the Bank's stock at $20 per share. On December 22, 1992, the Board wrote Hammond as follows: "Confirming the action by the Board of Directors at the December 18, 1992 meeting of the Board, you are extended an option to purchase up to 5,000 shares of the stock . . . at a strike price of TWENTY ($20.00) DOLLARS per share." The letter further stated that the option was subject to the condition that it not violate any state or federal laws.

The Bank moved for summary judgment, contending that a binding stock option never existed and that a condition precedent to Hammond's exercise of the option, the approval by the Bank's shareholders and the State Department of Banking, had never been fulfilled; therefore, Hammond had no legally enforceable right to the option. It is undisputed that the option was never submitted to the shareholders or the Department of Banking.

The trial court granted the Bank's motion, citing OCGA § 7-1-488 (e) which provides that "a bank . . . may adopt or carry out a plan, approved by the [State Department of Banking], . . . and the

affirmative vote of a majority of the [shareholders], . . . for the granting of options for shares, to some . . . of the officers. . . ." The court held that because the proposed option had never been submitted to the shareholders or the Department of Banking, that "Plaintiff's claim would fail even if the Court were to find that such an option had indeed been granted by Defendant."

1. Hammond contends that the trial court erred in granting the Bank's motion for summary judgment. We agree and reverse. At the outset we note that to the extent the trial court's order can be construed as a finding that no issue of fact exists regarding whether the Bank ever granted Hammond a stock option, it is in error. "The cardinal rule of the summary judgment procedure is that the court can neither resolve facts nor reconcile the issues but only look to ascertain if there is an issue. . . ." (Citations and punctuation omitted.) *White House v. Winkler*, 202 Ga. App. 603, 606 (415 SE2d 185) (1992). In addition to the documentary evidence outlined above, the record contains other evidence that the Bank offered Hammond the stock option in 1986, including a letter from a member of the Board to Hammond stating that the member had asked the accountant to "put the option in effect to give expression to the desires of the parties at the time the bank was in organization. . . ." Thus, Hammond presented sufficient evidence to create a jury issue as to whether the Bank had agreed to extend him the stock option.

Hammond contends that the trial court erred in granting summary judgment based on the fact that the prerequisites of OCGA § 7-1-488 (e) had not been met when that failure was attributable to the Bank. Hammond contends that because the Bank failed to take the steps necessary to effectuate the statute's requirements after promising to do so, it cannot now rely on the failure of a condition precedent that it caused. See, e.g., *Feagin v. Feagin*, 174 Ga. App. 474 (330 SE2d 410) (1985) (a party cannot avoid the obligations of a contract by frustrating the performance of a condition precedent). See also 17A CJS, Contracts, § 468 (b). (One who hinders fulfillment of condition precedent cannot rely on condition to defeat liability.) In support of this argument, Hammond averred that in "December of 1992, at the meeting of the board . . . Hamilton Arnall (a board member) told me that my stock option . . . would be submitted to the shareholders for approval in . . . the annual meeting in April of 1993."

The Bank contests that Hammond was ever told the stock option would be submitted to the shareholders and also denies that it refused to make the submission to the shareholders or the Department of Banking. Further, the Bank argues that Hammond in essence waived any right to hold it responsible for the failure to obtain the requisite approvals because it was Hammond, not the Bank, who re-

jected submission of the option to the shareholders. In support of this argument, the Bank points to the deposition testimony of one of its board members that in 1987, upon learning of the cost and necessity of both State Banking Department and shareholder approval before the option could be granted, Hammond told them to "[f]orget it."

The Bank concedes in its briefs that the evidence concerning the parties' treatment of the alleged stock option between 1986 and 1992 was conflicting and that the Bank's contention that Hammond said to "forget it" is contested. However, the Bank contends that this is not relevant to our review on appeal. We disagree. "The party opposing the motion is to be given the benefit of all reasonable doubts and all favorable inferences that may be drawn from the evidence." (Citations and punctuation omitted.) *Winkler*, supra. Moreover, "[a]lthough the issue of a waiver of a contract provision is not always a jury question, 'it is a question for the trior of fact when the evidence in that regard is conflicting.' [Cit.]" *Kusuma v. Metametrix*, 191 Ga. App. 255, 257 (3) (381 SE2d 322) (1989).

Because there was conflicting evidence as to the existence of the stock option, whether Hammond was promised that the option would be submitted to the shareholders, and whether it was Hammond or the Bank who prevented the performance of a condition precedent, several issues of fact remain for the jury and the trial court erred in granting the Bank's motion for summary judgment.

2. Based on our holding in Division 1, we need not address Hammond's remaining enumerations of error.

*Judgment reversed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED MARCH 17, 1995 —
RECONSIDERATION DENIED MARCH 29, 1995.

*Slaughter & Virgin, Frank W. Virgin,* for appellant.
*Tisinger, Tisinger, Vance & Greer, J. Thomas Vance, C. David Mecklin, Jr.,* for appellee.