297 Ga. 38
FINAL COPY

S15Q0418.  PIEDMONT OFFICE REALTY TRUST, INC. v. XL
SPECIALTY INSURANCE COMPANY.

THOMPSON, Chief Justice.

Piedmont Office Realty Trust, Inc. ("Piedmont") purchased and maintained two insurance policies —  a primary policy issued by Liberty Surplus Insurance Company and an excess coverage policy issued by XL Specialty Insurance Company ("XL").  The primary policy provided coverage of up to $10 million for claims against Piedmont.  The excess policy provided an additional $10 million in excess of the primary policy's coverage limits.

The excess policy provides that XL will only pay for a "loss" which Piedmont becomes "legally obligated to pay as a result of a securities claim."  The policy also contains a "consent to settle" clause which reads:

> No claims expenses shall be incurred or settlements made, contractual obligations assumed or liability admitted with respect to any claim without the insurer's written consent, which shall not be unreasonably withheld.  The insurer shall not be liable for any

claims expenses, settlement, assumed obligation or admission to which it has not consented.

In addition, the policy contains a "no action" clause which reads:

> No action shall be taken against the insurer unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, and the amount of the insureds' obligation to pay shall have been finally determined either by judgment against the insureds after actual trial, or by written agreement of the insureds, the claimant and the insurer.

Piedmont was named as a defendant in a federal securities class action suit in which the plaintiffs sought damages exceeding $150 million. Relatively early in the litigation, Piedmont moved for summary judgment. The district court denied Piedmont's motion. Thereafter, following years of discovery and litigation, Piedmont renewed its summary judgment motion. The district court granted the renewed motion and dismissed the class action suit. Plaintiffs appealed.

While the plaintiffs' appeal was pending, plaintiffs and Piedmont agreed to mediate plaintiffs' claim. By that time, Piedmont had already exhausted its coverage limit under its primary policy and another $4 million of its excess policy simply by defending itself. Anticipating a settlement with plaintiffs, Piedmont sought XL's consent to settle the claim for the remaining $6 million under the excess policy. XL agreed to contribute $1 million toward the settlement, but no more.

Without further notice to XL and without obtaining XL's consent, Piedmont agreed to settle the underlying lawsuit with plaintiffs for $4.9 million. The district court approved the settlement, and Piedmont demanded XL provide coverage for the full settlement amount. XL refused.

Piedmont filed suit against XL for breach of contract and bad faith failure to settle under OCGA § 33-4-6. XL moved to dismiss the complaint; the district court granted XL's motion; and Piedmont appealed. Thereupon, the Eleventh Circuit certified the following questions to this Court:

> (1) Under the facts of this case, and in the light of the Final Judgment and Order — in the Underlying Suit — approving of and authorizing and directing the implementation of the terms of the settlement agreement, is Piedmont "legally obligated to pay" the

$4.9 million settlement amount, for purposes of qualifying for insurance coverage under the Excess Policy?

(2) In a case like this one, when an insurance contract contains a "consent-to-settle" clause that provides expressly that the insurer's consent "shall not be unreasonably withheld," can a court determine, as a matter of law, that an insured who seeks (but fails) to obtain the insurer's consent before settling is flatly barred — whether consent was withheld reasonably or not — from bringing suit for breach of contract or for bad-faith failure to settle? Or must the issue of whether the insurer withheld unreasonably its consent be resolved first?

(3) In this case, under Georgia law, was Piedmont's complaint dismissed properly?

Piedmont Office Realty Trust, Inc. v. XL Specialty Ins. Co., 769 F3d 1291 (11th Cir. 2014).

In Trinity Outdoor, LLC v. Central Mut. Ins. Co., 285 Ga. 583 (679 SE2d 10) (2009), Trinity was insured by Central pursuant to a $2 million general liability policy which provided, inter alia, that "'[n]o insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than first aid, without our consent'" and that

[n]o person or organization has a right . . . [t]o sue us on this

4

Coverage Part unless all of its terms have been complied with. A person or organization may sue us to recover on an agreed settlement or a final judgment against an insured obtained after an actual trial. . . . An agreed settlement means a settlement and release of liability signed by us, the insured, and the claimant or the claimant's legal representative.

Trinity and another entity, Phoenix Outdoor, LLC, were sued in tort, and the trial court ordered the parties to mediation. The plaintiffs initially demanded $14 million from the defendants. Phoenix's insurer offered $10 million on behalf of Phoenix; Central offered $200,000 on behalf of Trinity, although plaintiffs demanded Trinity pay $1.37 million at that time. The case ultimately settled for $12 million. Of that amount, without Central's approval, Trinity agreed to contribute $954,530. Central deemed Trinity's payment of an amount exceeding $200,000 to be voluntary, and it refused Trinity's demand for the additional $754,530. Trinity brought suit against Central in state court claiming Central breached the insurance agreement and refused to settle with the plaintiffs in bad faith. Central removed the case to federal district court which

5

certified this question of Georgia law to this Court: "Whether an action for negligent or bad faith failure to settle a case requires that a judgment be entered against an insured in excess of the policy limits before the action can be asserted." We answered that question affirmatively, relying on the plain language of the policy, as we were required[1] to do:

> Simply applying the terms of this contract as written, Trinity's claim against Central is untenable for several reasons. First, the parties agreed that any voluntary agreement made by Trinity without Central's consent (other than first aid) would not be allowed under the contract. There is no question that, under the facts of this case, Trinity's payment of $754,530 was voluntary in nature. Second, the contract clearly states that Central will be liable to pay those sums that Trinity is legally obligated to pay. A voluntary payment does not constitute a legal obligation. Finally, the contract also clearly indicates that Central may be sued based on a settlement agreement to which Central agreed or a final judgment entered after an actual trial. Trinity's payment to the [plaintiffs] in this case does not qualify under either of these categories.

Id. at 585-586.

In this case, as in Trinity, the plain language of the insurance policy does not allow the insured to settle a claim without the insurer's written consent. It

---

[1] "As is the case with all contracts, unambiguous terms of an insurance policy require no construction, and the plain meaning of such terms must be given full effect, regardless of whether they might be beneficial to the insurer or detrimental to the insured." Continental Cas. Co. v. H. S. I. Financial Services, Inc., 266 Ga. 260, 262 (466 SE2d 4) (1996).

also provides that the insurer shall only be liable for a loss which the insured is "legally obligated to pay." Finally, the policy contains a "no action" clause which stipulates that the insurer may not be sued unless, as a condition precedent, the insured complies with all of the terms of the policy and the amount of the insured's obligation to pay is determined by a judgment against the insured after a trial or a written agreement between the claimant, the insured, and the insurer. In light of these unambiguous policy provisions, we hold that Piedmont is precluded from pursuing this action against XL because XL did not consent to the settlement and Piedmont failed to fulfill the contractually agreed upon condition precedent. Trinity, supra; see Reed v. Auto-Owners Ins. Co., 284 Ga. 286 (667 SE2d 90) (2008).

Piedmont asserts Trinity is inapplicable because its policy expressly provides that XL will not withhold its consent to settle unreasonably, while the policy in Trinity contained no such express provision. However, even without such an express provision in its policy, an insurer cannot unreasonably refuse to settle a covered claim:

> An insurance company may be liable for damages to its insured for failing to settle the claim of an injured person where the insurer is guilty of negligence, fraud, or bad faith in failing to compromise the

7

claim. McCall v. Allstate Ins. Co., 251 Ga. 869, 870 (310 SE2d 513) (1984). In deciding whether to settle a claim within the policy limits, the insurance company must give equal consideration to the interests of the insured. Great American Ins. Co. v. Exum, 123 Ga. App. 515, 519 (181 SE2d 704) (1971). The jury generally must decide whether the insurer, in view of the existing circumstances, has accorded the insured "the same faithful consideration it gives its own interest." Id.; see U. S. Fidelity &c. Co. v. Evans, 116 Ga. App. 93 (156 SE2d 809), aff'd, 223 Ga. 789 (158 SE2d 243) (1967).

Southern Gen. Ins. Co. v. Holt, 262 Ga. 267, 268-269 (416 SE2d 274) (1992).

See also WirelessMD, Inc. v. Healthcare.com Corp., 271 Ga. App. 461, 468 (610 SE2d 352) (2005) (every contract implies a covenant of good faith and fair dealing which modifies and becomes part of the contract itself); Rappaport-Scott v. Interinsurance Exchange of the Automobile Club, 53 Cal. Rptr. 3d 245, 249 (146 Cal.App.4th 831) (2007) (insurance policy's implied covenant of good faith and fair dealing includes insurer's duty to accept reasonable settlement). Thus, it was implied in the policy in Trinity that the insurer could not unreasonably withhold its consent to settle. And, in spite of this implied provision, we determined that the insured in Trinity could not settle the underlying lawsuit without the insurer's consent and then sue the insurer for refusing to settle in bad faith.

Piedmont also asserts Trinity is inapplicable because the settlement

agreement between Piedmont and the plaintiffs was approved by the district court. This assertion must fail because, as noted above, the "consent to settle" clause precluded Piedmont from entering into a settlement agreement without XL's prior consent. Piedmont could not settle the underlying lawsuit without XL's consent — in breach of its insurance contract — and then, after breaching the contract, claim that the district court's approval of the settlement imposed upon XL a distinct legal obligation to pay the settlement on Piedmont's behalf. See Wolverine Ins. Co. v. Sorrough, 122 Ga. App. 556 (177 SE2d 819) (1970) (material breach of insurance contract by insured relieves insurer of obligation to defend lawsuit, or pay judgment, against insured).

Nor can we accept the assertion that, because XL denied coverage, it is estopped from insisting that Piedmont needed to obtain its consent prior to settling the underlying lawsuit. Although "an insurer that denies coverage and refuses to defend an action against its insured . . . 'waives the provisions of the policy against a settlement by the insured and becomes bound to pay the amount of any settlement (within a policy's limits) made in good faith,'" Southern Guaranty Ins. Co. v. Dowse, 278 Ga. 674 (605 SE2d 27) (2004), XL did not "wholly abandon" Piedmont — it did not refuse to cover the underlying claim.

Trinity, supra at 586-587. On the contrary, XL provided Piedmont with coverage and a defense throughout the underlying proceedings. Id.

We recognize that other jurisdictions have held that an insured who settles a lawsuit in violation of a "no action" clause can still bring a bad faith claim against the insurer. See, e.g., Alexander Mfg., Inc. v. Illinois Union Ins. Co., 666 FSupp.2d 1185, 1201 (D. Or. 2009); Rupp v. Transcontinental Ins. Co., 627 FSupp.2d 1304, 1323 (D. Utah 2008) (applying Utah law). But there is no uniformity on that point. See, e.g., Zurich Am. Ins. Co. v. Frankel Enterprises, 509 FSupp.2d 1303, 1310 (S.D. Fla. 2007) (insurer cannot be bound by unauthorized settlement when it has not refused to defend) (applying Florida law). And it is not the law in Georgia. Trinity, supra.

In sum, absent XL's consent to the settlement, under the terms of the policy, Piedmont could not sue XL for bad faith refusal to settle the underlying lawsuit in the absence of a judgment against Piedmont after an actual trial. It follows that the district court did not err in dismissing Piedmont's complaint.

Questions answered. Hines, P. J., Benham, Hunstein, Melton and Blackwell, JJ., and Judge Frank J. Jordan, Jr., concur. Nahmias, J., disqualified.

10

Decided April 20, 2015.

Certified questions from the United States Court of Appeals for the Eleventh Circuit.

King & Spalding, Anthony P. Tatum, Bethany M. Rezek, Merritt E. McAlister, J. Andrew Pratt, Jeffrey S. Bucholtz, for appellant.

Swift, Currie, McGhee & Hiers, D. Lee Clayton; Wiley Rein, Charles C. Lemley, for appellee.

Weissman, Nowack, Curry & Wilco, Seth M. Friedman, amici curiae.