311 Ga. 346
FINAL COPY

S21Q0227.  GEICO INDEMNITY COMPANY v. WHITESIDE.

ELLINGTON, Justice.

The United States Court of Appeals for the Eleventh Circuit certified to this Court three questions of Georgia law relating to a lawsuit brought in federal district court by Fife Whiteside, the trustee of the bankruptcy estate of Bonnie Winslett. See *Whiteside v. GEICO Indem. Co.*, 977 F3d 1014, 1022 (III) (11th Cir. 2020). Whiteside sued GEICO to recover the value of Winslett's failure-to-settle tort claim against GEICO so that the bankruptcy estate could pay creditor Terry Guthrie, who was injured in an accident caused by Winslett. See *Whiteside v. GEICO Indem. Co.*, 352 FSupp.3d 1257 (M.D. Ga. 2018). The questions certified to us by the Eleventh Circuit, recounted at the end of Division 1 below, ask us to analyze how Georgia law applies to an unusual set of circumstances at the intersection of contract and tort law, circumstances implicating both

Winslett's duty to give GEICO notice of suit and GEICO's duty to settle the claim brought against Winslett. As explained more fully below, we are unable to give unqualified "yes" or "no" answers to two of the certified questions as they have been posed; rather, we can answer the questions only in the context of the circumstances of this particular case.[1]

1. *Factual and procedural background.*

On February 26, 2012, while driving Karen Griffis's Ford Explorer, Winslett struck Guthrie, who was riding a bicycle. It is undisputed that Winslett was at fault. Guthrie received emergency medical treatment for his injuries. When his pain persisted, Guthrie returned to the hospital for further treatment.

---

[1] This Court's certified question jurisdiction extends to questions of law. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. IV ("The Supreme Court shall have jurisdiction to answer any question of law from any state appellate or federal district or appellate court."). We do not give advisory opinions or respond to certified questions that are anticipatory in nature. See *CSX Transp. v. City of Garden City,* 279 Ga. 655, 658 n.5 (619 SE2d 597) (2005). Additionally, the particular phrasing of a certified question does not restrict our consideration of the issues raised as we perceive them in our analysis of the record certified in the case. See *Union Camp Corp. v. Helmy,* 258 Ga. 263, 264-265 (367 SE2d 796) (1988).

When the accident occurred, Griffis's Ford Explorer was insured by GEICO, and Winslett was a permissive driver and thus an "insured" covered by the policy.[2] The policy provided $30,000 of coverage per person of bodily injury liability coverage. GEICO notified Winslett in a letter that, "[b]ased on the evidence we have gathered, we are responsible for the accident. Mr. Guthrie was injured in this accident and we will be handling this injury directly with" his attorney. Winslett was not the policyholder, and she did not have a copy of Griffis's policy. GEICO did not ask Winslett to forward to it any accident-related legal documents, even though its claims manual advised its claims examiners to do so. Nor did GEICO inform Winslett that she had an obligation pursuant to the policy to notify GEICO if she was sued.

On May 15, 2012, Guthrie's lawyer sent GEICO a letter demanding that GEICO tender within 30 days the $30,000 policy limit to settle the liability claim against Winslett. The letter

---

[2] The policy described "persons insured" to include "any other person operating the auto with [the policyholder's] permission."

informed GEICO that, as of May 15, Guthrie's medical expenses exceeded $10,000 and that he would require additional treatment. On May 23, GEICO rejected the demand and made a counteroffer of $12,409. When GEICO made the counteroffer, it had been informed that Guthrie's medical expenses were closer to $15,000. Guthrie's attorney did not respond to the counteroffer.

GEICO's claims adjuster continued her efforts, through letters and phone calls, to contact Guthrie's attorney about a settlement. She first followed up on GEICO's counteroffer about a week after it was made, calling Guthrie's attorney and leaving a voicemail when she got no answer. About a month later, the adjuster called again and left another voicemail. A few weeks later, the adjuster once more called the attorney's office and was told that both the attorney and his paralegal were unavailable. Guthrie's attorney did not respond to those calls and letters.

On May 29, six days after GEICO had rejected the settlement demand, Guthrie filed suit against Winslett. Guthrie's attorney did not inform GEICO of the suit. Although Winslett received the

summons and complaint, she did not inform GEICO or forward the suit papers to it. Instead, she called Guthrie's law firm, and a paralegal instructed her to contact GEICO. Rather than doing as instructed, Winslett discarded the summons and complaint. She later explained that she did not notify GEICO of the suit because she thought that GEICO was already handling it based on its communication with her. Winslett did not answer the complaint or appear in court.

On August 1, following a hearing, the Superior Court of Muscogee County entered a default judgment of $2,916,204 against Winslett. On August 8, Guthrie's attorney informed GEICO of the judgment. GEICO, on Winslett's behalf, filed a motion to set aside the judgment.[3] On November 30, after an evidentiary hearing, the

---

[3] Because the term of court in which the superior court entered the default judgment had ended when Winslett moved to set it aside, Winslett argued, among other things, that, because she was not provided with notice of the entry of the default judgment, setting aside the judgment was warranted under OCGA § 9-11-60 (d) (2) (permitting a motion to set aside based on "[f]raud, accident, or mistake or the acts of the adverse party unmixed with the negligence or fault of the movant") or OCGA § 9-11-60 (d) (3) (permitting a motion to set aside based on "[a] nonamendable defect which appears upon the face of the record or pleadings"). She also argued that the trial court should

5

superior court denied the motion. The Court of Appeals affirmed the superior court's judgment. *Winslett v. Guthrie*, 326 Ga. App. 747 (755 SE2d 287) (2014).

After Winslett had exhausted her appellate remedies, Guthrie sought to collect on his judgment. Guthrie forced Winslett into involuntary bankruptcy by filing a petition pursuant to Chapter 7 of the federal Bankruptcy Code. On May 22, 2015, following a hearing, the bankruptcy court granted Guthrie's motion for summary judgment and adjudicated Winslett a Chapter 7 debtor. On September 10, the bankruptcy trustee, Whiteside, moved the bankruptcy court for an order appointing a personal injury attorney to represent the bankruptcy estate in investigating potential failure-to-settle litigation against GEICO.[4] On September 14, the bankruptcy court granted the motion and appointed Guthrie's

---

have vacated the judgment under OCGA § 9-11-60 (g) (permitting a trial court to correct, at any time, "[c]lerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission").

[4] In Georgia, an insurance company that acts negligently or in bad faith in rejecting a time-limited demand to settle a covered claim within the limits of the insurance policy may be liable for a subsequent judgment against its insured in excess of the policy limits. See *First Acceptance Ins. Co. of Ga. v. Hughes*, 305 Ga. 489, 492 (1) (826 SE2d 71) (2019).

personal injury attorney to represent the bankruptcy estate.

On September 12, 2016, Whiteside filed suit against GEICO in the federal district court for the Middle District of Georgia, alleging that GEICO negligently or in bad faith failed to settle Guthrie's claim against Winslett, which resulted in a judgment against Winslett in excess of the policy limits.[5] GEICO filed a motion for judgment as a matter of law during trial and renewed the motion after the jury returned a verdict in Winslett's favor. In those motions, GEICO argued that, pursuant to its policy's notice provision and OCGA § 33-7-15 (b), it was relieved "of any liability to

---

[5] Whiteside alleged a common law tort claim for the negligent or bad faith failure to settle a personal injury claim against an insured covered under a motor vehicle liability policy. He did not allege that GEICO failed to pay claims involving first-party insurance pursuant to OCGA § 33-4-6 or that GEICO failed to timely adjust, investigate, evaluate, or settle a property damage claim pursuant to OCGA § 33-4-7. We note that the parties and the Eleventh Circuit have occasionally cited cases that arise from policies providing commercial general liability, property, or uninsured motorist coverage. To the extent that the legal principles expressed in those cases apply to the questions posed, we have addressed them. We note, however, that there are often different post-loss duties and principles of causation applicable to these varied policies, especially as between "first-party" and "third-party" types of coverage. Generally, "first-party" insurance protects the insured from its own actual losses and expenses, whereas "third-party" insurance protects the insured from losses resulting from actual or potential liability to a third party. See generally Steven Plitt et al., Couch on Insurance § 198:3 (3d ed. 2020) (discussing first-party versus third-party claims).

pay any judgment" because it had never received notice of the underlying personal injury suit. GEICO also argued that it could not be the proximate cause of the default judgment against Winslett, given Winslett's failure to notify it of the lawsuit. GEICO further argued that it was unfair and unconstitutional to use the default judgment as the measure of damages when GEICO did not have an opportunity to contest Guthrie's damages in the underlying suit. The district court was not persuaded by any of those arguments.

Although the district court agreed that both GEICO's policy and OCGA § 33-7-15 (b) required Winslett to notify GEICO of Guthrie's suit, it ruled that Winslett's failure to give notice did not prevent her or the bankruptcy trustee from recovering in tort for GEICO's negligent or bad faith failure to settle under circumstances where GEICO was a proximate cause of Winslett's failure to give notice of the lawsuit. See *Whiteside*, 352 FSupp.3d at 1264-1265 (II). The district court ruled that proximate cause was a question of fact and that some evidence supported a finding that GEICO's conduct contributed to the circumstances that led to the default judgment

8

against Winslett. See id. at 1259-1264 (I). In addition to instructing the jury on the insurer's settlement duties, the court instructed the jury that, if GEICO was responsible for the ensuing default judgment against Winslett, GEICO would be responsible for paying her compensatory damages. See id. at 1260-1262 (I). The court also used the $2.9 million default judgment as the appropriate measure of damages, rejecting GEICO's argument that holding it liable for damages obtained in the underlying suit would violate due process when it had no opportunity to defend Winslett against Guthrie's claims. See id. at 1266-1267 (III). The jury ultimately found that Winslett was 30 percent liable for the default judgment against her and that GEICO was 70 percent liable. The final judgment against GEICO, including interest, exceeded $2.7 million. See id. at 1258-1259.

GEICO appealed to the Eleventh Circuit, which certified to this Court the following questions:

> (a) When an insurer has no notice of a lawsuit against its insured, does OCGA § 33-7-15 and a virtually identical insuring provision relieve the insurer of liability

9

from a follow-on suit for bad faith?

(b) If the notice provisions do not bar liability for a bad-faith claim, can an insured sue the insurer for bad faith when, after the insurer refused to settle but before judgment was entered against the insured, the insured lost coverage for failure to comply with a notice provision?

(c) Does a party have the right to contest actual damages in a follow-on suit for bad faith if that party had no prior notice of or participation in the original suit?

2. *Background principles of law.*

Under Georgia law, an insurer and an insured owe each other many post-loss duties that arise from their contractual relationship. Some of these duties are implied; others are found in the terms and conditions of the insurance policy. For example, "every contract implies a covenant of good faith and fair dealing which modifies and becomes part of the contract itself[.]" (Citation omitted.) *Piedmont Office Realty Trust v. XL Specialty Ins. Co.*, 297 Ga. 38, 42 (771 SE2d 864) (2015).[6] Insurance policies also contain express terms imposing

_____

[6] See also *Brack v. Brownlee*, 246 Ga. 818, 820 (273 SE2d 390) (1980) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." (citation and punctuation omitted)). Essentially, "the duty of good faith and fair dealing requires a party in a

10

obligations on the parties to the contract, which may include the insured's duty to give the insurer notice of a claim and proof of loss,[7] the insured's duty to give notice of suit and to forward suit papers to the insurer,[8] the insured's duty to cooperate with the insurer in defending the claim,[9] the insurer's duty to actually defend the claim,[10] the insurer's duty to investigate and to settle covered policy

contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain." (Citation and punctuation omitted.) *Wanna v. Navicent Health*, 357 Ga. App. 140, 154 (3) (850 SE2d 191) (2020).

[7] See *Plantation Pipe Line Co. v. Stonewall Ins. Co.*, 335 Ga. App. 302, 310 (2) (780 SE2d 501) (2015) (Generally, "a notice provision in an insurance contract that is expressly made a condition precedent to coverage is valid and must be complied with, absent a showing of justification." (citation and punctuation omitted)).

[8] See *Stonewall Ins. Co. v. Farone*, 129 Ga. App. 471, 473-474 (199 SE2d 852) (1973) (discussing the insured's duty, as a condition precedent, to inform the insurer of suit, as well as the insurer's obligations when adequate and timely notice and forwarding of suit papers is made by someone other than the insured); see also OCGA § 33-7-15.

[9] See *Southern Mut. Ins. Co. v. Mason*, 213 Ga. App. 584, 588 (2) (445 SE2d 569) (1994) ("It is well established that the insured has a duty to cooperate with his insurer in all aspects of a lawsuit and to make a full, fair, complete, and truthful disclosure of all facts relating to the [loss]." (citation and punctuation omitted)).

[10] See *City of Atlanta v. St. Paul Fire & Marine Ins. Co.*, 231 Ga. App. 206, 207 (498 SE2d 782) (1998) ("An insurer's duty to defend turns on the language of the insurance contract and the allegations of the complaint asserted against the insured. [Courts] look to the allegations of the complaint to determine whether a claim covered by the policy is asserted. If the facts as alleged in the complaint even arguably bring the occurrence within the policy's

11

claims by its insured,[11] and the insurer's duty to inform the insured as to denials or disclaimers of coverage.[12] See generally Steven Plitt et al., Couch on Insurance, §§ 186-203 (3d ed. 2020) (discussing post-loss rights and duties). Although the questions posed to us by the Eleventh Circuit focus on the insured's duty to notify the insurer of suit and the insurer's duty to settle a meritorious, covered claim, we are mindful that these duties are part of a larger bundle of duties. Those duties are often interrelated, may implicate or overlap with other duties, and they may derive from different sources, including statutory law or the express terms or implied covenants of the contract. For example, although an insurer's duty to accept a reasonable settlement offer may be written into the terms of an insurance contract, an insurer's duty to settle also arises from and is included within the covenant of good faith and fair dealing implied in every insurance contract. See *Piedmont Office*, 297 Ga. at 42

---

coverage, the insurer has a duty to defend the action." (citations omitted)).

[11] See *Piedmont Office*, 297 Ga. at 42.

[12] See *Hoover v. Maxum Indem. Co.*, 291 Ga. 402, 404 (1) (730 SE2d 413) (2012) (discussing an insurer's options and obligations upon denying coverage for a claimed loss).

("insurance policy's implied covenant of good faith and fair dealing includes insurer's duty to accept [a] reasonable settlement").

Whiteside's lawsuit alleged that GEICO breached its duty to settle a covered claim for which it had accepted liability. Whiteside asserted that, due to GEICO's negligent or bad faith failure to settle, Guthrie had obtained a default judgment against Winslett in excess of the policy limits. Based on these allegations, Whiteside claimed that GEICO's negligent or bad faith failure to settle Guthrie's personal injury claim against Winslett proximately caused damages to her of over $2.9 million, the amount of the default judgment entered against her in Guthrie's suit.

Although the claim asserted by Whiteside on behalf of Winslett arises from a contractual relationship between insured and insurer, the claim asserts extra-contractual liability and sounds in tort. See *Canal Indem. Co. v. Greene*, 265 Ga. App. 67, 73 (3) (593 SE2d 41) (2003) ("A claim for bad-faith failure to settle sounds in tort and involves, at least in part, a claim that the insurer's conduct exposed the insured's personal property to loss." (citation and punctuation

13

omitted)). Regardless of the type of coverage at issue, the unreasonableness of the insurer's conduct is at the heart of a negligent or bad faith failure-to-settle claim, and the reasonableness of the insurer's actions or decisions must be judged at the time they were taken or made. See, e.g., *First Acceptance Ins. Co. of Ga. v. Hughes*, 305 Ga. 489, 492-493 (1) (826 SE2d 71) (2019). ("[A]n insurer's duty to settle arises when the injured party presents a valid offer to settle within the insured's policy limits."); *Fortner v. Grange Mut. Ins. Co.*, 286 Ga. 189, 190 (686 SE2d 93) (2009) (Whether an insurance company acted in "bad faith in refusing to settle depends on whether the insurance company acted reasonably in responding to a settlement offer[.]" (citation and punctuation omitted)).

The elements of a negligent or bad faith failure to settle a claim are straightforward: "[T]he insured may sue the insurer for failure to settle only when the insurer had a duty to settle the case, breached that duty, and its breach proximately caused damage to the insured beyond the damages, if any, contemplated by the

14

insurance contract." *Delancy v. St. Paul Fire & Marine Ins. Co.*, 947

F2d 1536, 1546-1547 (11th Cir. 1991). As this Court has explained:

> An insurance company may be liable for the excess judgment entered against its insured based on the insurer's bad faith or negligent refusal to settle a personal claim within the policy limits. An insurer is negligent in failing to settle if the ordinarily prudent insurer would consider choosing to try the case created an unreasonable risk. The rationale is that the interests of the insurer and insured diverge when a plaintiff offers to settle a claim for the limits of the insurance policy. An insurance company's bad faith in refusing to settle depends on whether the insurance company acted reasonably in responding to a settlement offer, bearing in mind that, in deciding whether to settle, the insurer must give the insured's interests the same consideration that it gives its own. Generally, it is for the jury to decide whether the insurer, in view of the existing circumstances, has accorded the insured the same faithful consideration it gives its own interest.

(Citations, punctuation and emphasis omitted.) *First Acceptance*,

305 Ga. at 492 (1).

In its defense, GEICO argued, among other things, that under

the plain language of the insurance policy[13] and the plain language

---

[13] The policy contained a notice provision with language conforming to OCGA § 33-7-15:

> If a claim or suit is brought against an ***insured***, unless

of § 33-7-15, Winslett had a duty to send GEICO the summons and complaint from Guthrie's lawsuit, and she breached that duty. Her noncompliance with these notice requirements, GEICO argued,

---

        otherwise received by us, ***you*** are required to send us a copy of every summons or other process relating to the coverage under this policy and to otherwise cooperate with us in connection with the defense of any action or threatened action covered under this policy.

        If ***you*** fail to comply with this provision, it will constitute a breach of the insurance contract and if prejudicial to us, shall relieve us of our obligation to defend ***you*** and any other ***insureds*** under this policy and of any liability to pay any judgment or other sum on ***your*** or any other ***insureds[']*** behalf.

        However, we will accept notice of a claim against an insured from an injured party if the ***insured*** has failed to give written notice within 30 days from the date of the occurrence. The notice from the injured party must be in writing and sent by registered mail.

(Emphasis in original.)

    The policy further provided that "[n]o suit will lie against us . . . [u]nless the insured has fully complied with all the policy's terms and conditions[.]"

    We note that the policy's notice requirement is directed at "you," which appears to be a narrower term than "insured" as it is used in the policy. "You" is defined in the policy to mean "the policyholder named in the declarations or his or her spouse if a resident of the same household." Further, the policy uses language discussing the duty to defend "you and any other insureds" and to pay judgments on "your or any other insured[']s behalf." However, the policy also discusses notice from the injured party in terms of "if the insured has failed to give written notice." It is unclear to us whether the policy imposed a notice requirement on Winslett. It does not appear from the certified record that the parties have litigated this issue, and we will proceed on the assumption that the policy did impose a notice requirement on Winslett.

16

relieved it of its obligation to defend her or to pay any judgment on her behalf. OCGA § 33-7-15 provides, in pertinent part:

> (a) No motor vehicle liability insurance policy covering a motor vehicle principally garaged or principally used in this state shall be issued, delivered or issued for delivery, or renewed in this state unless such policy contains provisions or has an endorsement thereto which specifically requires the insured to send his insurer, as soon as practicable after the receipt thereof, a copy of every summons or other process relating to the coverage under the policy and to cooperate otherwise with the insurer in connection with the defense of any action or threatened action covered under the policy.
>
> (b) Noncompliance by the insured with this required provision or endorsement shall constitute a breach of the insurance contract which, if prejudicial to the insurer, shall relieve the insurer of its obligation to defend its insureds under the policy and of any liability to pay any judgment or other sum on behalf of its insureds.[14]

---

[14] The statute contains an exception to these notice requirements, OCGA § 33-7-15 (c), but that exception is not at issue in this case. Subsection (c) provides:

> Subsections (a) and (b) of this Code section shall not operate to deny coverage for failure to send a copy of a summons or other process relating to policy coverage if such documents are sent by a third party to the insurer or to the insurer's agent by certified mail or statutory overnight delivery within ten days of the filing of such documents with the clerk of the court. If the name of the insurer or the insurer's agent is unknown, the third party shall have a period of 30 days from the date the insurer or agent becomes known in which to send these required documents. Such documents must be sent to the insurer or agent at least 30 days prior to the entry of any judgment against the insured.

17

Winslett's failure to notify GEICO of Guthrie's suit and to send it the suit papers, GEICO argued, barred Whiteside's failure-to-settle claim as a matter of law.

GEICO further contended that allowing the jury to use the default excess judgment against Winslett as the measure of damages in the failure-to-settle suit violated its right to due process because it had no notice and opportunity to contest the damages in the underlying suit against Winslett. Under Georgia law, the common law tort of negligent or bad faith failure to settle provides that the insured "is entitled as a matter of law to recover damages equal to the amount by which the judgment exceeds policy coverage," and characterizes this measure of damages as compensatory and liquidated. *Cotton States Mut. Ins. Co. v. Brightman*, 256 Ga. App. 451, 455-456 (3) (568 SE2d 498) (2002) ("Where, as here, these are the only damages sought, damages are liquidated. . . . Where the amount of damages recoverable appears from the undisputed evidence to be certain, it is proper for the court

18

to direct the verdict." (citations and punctuation omitted)).[15]

As in Georgia, a majority of jurisdictions have adopted the principle that, "[i]f the insurer's breach of the duty to make a reasonable settlement decision causes an excess judgment against the insured, the insured is entitled to recover from the insurer, in addition to the policy limit, the difference between the policy limit and the underlying judgment." Restatement of the Law of Liability Insurance § 27, Reporter's Notes (a). Indeed, "[t]his is the paradigmatic measure of damages in a breach-of-settlement-duty lawsuit against an insurer." Id.

With these relevant background principles of law in mind, we turn to the questions posed by the Eleventh Circuit.

3. *Analysis.*

(a) When an insurer has no notice of a lawsuit against its insured, does OCGA § 33-7-15 and a virtually identical insuring provision relieve the insurer of liability from a follow-on suit for bad faith [failure to settle]?

---

[15] In addition to compensatory damages in the amount of an excess verdict, insureds (but not their assignees) may also seek punitive damages against their insurers for bad faith failure to settle. See *Southern Gen. Ins. Co. v. Holt*, 262 Ga. 267, 270 (2) (416 SE2d 274) (1992).

The answer to the first certified question is a qualified "no." Under the circumstances presented in the certified record, neither OCGA § 33-7-15 nor the related endorsement in the insurance policy relieves GEICO of liability for the bad faith or negligent failure-to-settle claim brought against it. At issue in the matter before us is not whether Winslett breached a condition precedent to coverage under the contract of insurance. Clearly she did. Rather, in this tort action, the question is whether Winslett's breach was an intervening act sufficient to break the causal chain between GEICO's unreasonable rejection of Guthrie's settlement demand and the excess default judgment entered against Winslett. The answer to this question turns on whether the facts of the case supported a finding that GEICO reasonably should have foreseen Winslett's breach and the consequences flowing from it.[16]

---

[16] See *Ontario Sewing Machine Co. v. Smith*, 275 Ga. 683, 686 (2) (572 SE2d 533) (2002) ("[I]f the character of the intervening act claimed to break the connection between the original wrongful act and the subsequent injury was such that its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrong-doer, the causal connection is not broken, and the original wrong-doer is responsible for all of

In its order on GEICO's motion for judgment notwithstanding the jury's verdict, the district court found that the jury had sufficient evidence from which to find that GEICO reasonably should have foreseen Winslett's breach:

> [GEICO] knew that Winslett was not the named insured on its policy and that she likely would not have a copy of the policy. It also knew that she had been cited for driving without a license, and through minimal investigation could have concluded that she did not have a driver's license. [GEICO] also had information reasonably available to it that Winslett was not stable, and that she lived in an unrentable apartment with no electricity and no furniture except for a mattress on the floor. [GEICO] had information available to it that should have put it on notice of Winslett's unreliability and lack of sophistication, which would lead a reasonable insurance company to conclude that such a person may not notify it of a lawsuit or respond to one served upon her. Remarkably, no evidence was produced at trial that [GEICO] ever explicitly informed Winslett that she should notify it if she was sued. Winslett testified that she did nothing after being served with the suit because she thought [GEICO] was handling it based on its prior

---

the consequences resulting from the intervening act." (citation and punctuation omitted.)); see also *Bussey v. Dawson*, 224 Ga. 191, 193 (160 SE2d 834) (1968) ("[Q]uestions of negligence, diligence, contributory negligence[,] and proximate cause are peculiarly matters for the jury, and a court should not take the place of the jury in solving them, except in plain and indisputable cases."). Although we do not opine on the sufficiency of the jury instructions in this case, we note that the district court instructed the jury on the principles of negligence, causation, proximate cause, and intervening acts.

21

contact with her. Notably, [GEICO's] own claims manual recognizes that[,] notwithstanding the notice requirements in the policy, it should [anticipate] that some insureds may not notify [GEICO] of a lawsuit and [that GEICO's] employees should take precautions[.][17]

Nevertheless, GEICO argues that, pursuant to the plain language of OCGA § 33-7-15 (b), Winslett's failure to notify it of Guthrie's lawsuit relieved it "of any liability to pay any judgment or other sum on behalf of its insureds." GEICO argues that the phrase "any judgment" would necessarily include a judgment obtained by or on behalf of an insured against an insurer alleging a negligent or bad faith failure to settle. This argument is without merit.

OCGA § 33-7-15 (b), which concerns motor vehicle liability policies, codifies a principle of contract law applicable to most

---

[17] GEICO's claims manual provided:

When an insured is served, he is then obligated by the terms of the policy to "send us all papers dealing with claims or suits immediately." While an insured has this obligation placed upon him or her by the terms of the policy, good practice is to remind the insured of the importance of this obligation while the investigation of the claim is underway. If the examiner feels there is a good chance that suit will be filed, remind the insured of his or her obligation in writing. The insured should be instructed to call us immediately upon receipt of a summons and complaint and to send to us the summons and complaint via registered or certified mail.

insurance policies: Generally, if an insured breaches a condition precedent to receiving a benefit under the insurance policy, the insurer is relieved of its obligation to provide that benefit to its insured.[18] Although this Code section provides that the insured's

---

[18] See, e.g., *Berryhill v. State Farm Fire & Cas. Co.*, 174 Ga. App. 97, 99 (329 SE2d 189) (1985) (affirming summary judgment in favor of insurer where, through no fault on its part, the insurer did not receive notice of a lawsuit as required by OCGA § 33-7-15 and under the policy until after a default judgment had been taken); see also *Silva v. Liberty Mut. Fire Ins. Co.*, 344 Ga. App. 81, 84 (1) (808 SE2d 886) (2017) ("Where an insured has not demonstrated justification for failure to give notice according to the terms of the policy, then the insurer is not obligated to provide either a defense or coverage. Thus, failure to provide the requisite notice could result in a forfeiture under the policy." (citation and punctuation omitted)). This principle of contract law, however, is not without its exceptions. For example, Georgia law generally does not allow contracting parties to avoid the consequences of their own tortious conduct. See OCGA § 13-4-23 ("If the nonperformance of a party to a contract is caused by the conduct of the opposite party, such conduct shall excuse the other party from performance."); *Hammond v. Bank of Newnan*, 217 Ga. App. 49, 50 (1) (456 SE2d 678) (1995) ("[O]ne who hinders fulfillment of condition precedent cannot rely on [that] condition to defeat liability." (citing 17A CJS, Contracts, § 468 (b)). Further, it is well settled that an insurance company may waive provisions placed in a policy for its own benefit and may by its conduct be estopped to assert defenses which might otherwise be available. See, e.g., *United Ins. Co. of America v. Hodges*, 161 Ga. App. 146, 148 (291 SE2d 50) (1982) ("In an action on a contract of insurance, the insurance company is generally considered estopped to deny liability on any matter arising out of the fraud, misconduct, or negligence of an agent of the company. If either party must suffer from an insurance agent's mistake, it must be the insurance company, his principal.") (citation and punctuation omitted) (physical precedent only); *Govt. Employees Ins. Co. v. Gates*, 134 Ga. App. 795, 796 (216 SE2d 619) (1975) (Under certain factual situations, the conduct of the insurer may constitute a waiver of the insured's duty to give notice or estop it from asserting the insured's failure to notify the insurer following a loss.).

breach of notice and cooperation duties relieves the insurer of coverage and defense obligations under the policy, subject to certain exceptions, it does not provide that the insurer is relieved of liability for tort claims that may arise out of the contractual relationship, and that is apparent from the plain language of the statute.

OCGA § 33-7-15 (a) requires the insured to send the insurer "every summons or other process *relating to the coverage under the policy* and to cooperate otherwise with the insurer in connection with the defense of any action or threatened action *covered under the policy*." (Emphasis supplied.) The Code section further provides that the insured's breach of these contractual duties relieves the insurer of its responsibility to defend such a covered suit or to pay any judgment "*on behalf of*" its insured. (Emphasis supplied.) OCGA § 33-7-15 (b). It is clear from this language that the duties and obligations imposed by the statute and the required endorsement apply when a suit is brought *against* the insured for losses *covered under the policy* for which the insurer would be obligated to pay *on behalf of* the insured for the insured's liability to another.

24

Whiteside's suit does not relate to a liability claim under the policy; rather, it is a tort claim that arises from the contractual relationship. Whiteside's claim is not for damages resulting from a covered loss; rather, it seeks damages for a breach of GEICO's duty to settle. And it does not seek payment *on behalf of* Winslett for a judgment she owes to a plaintiff who successfully sued her for a covered loss; rather, the suit seeks payment *to* Winslett's bankruptcy estate for damages Winslett incurred as a proximate cause of GEICO's failure to settle a covered claim against her.[19]

This does not mean, of course, that an insured's failure to meet his or her contractual obligations to the insurer is without consequence in a later suit in which the insured brings a negligent or bad faith tort claim against the insurer. Indeed, an insured's failure to satisfy a condition of the insurance policy may work in many cases to defeat an essential element of such a tort claim. For

---

[19] That any funds Whiteside recovers for Winslett's bankruptcy estate will be used to satisfy Guthrie's judgment against Winslett is not relevant to this analysis. How and to whom Whiteside disburses those funds on Winslett's behalf does not change the fundamental nature of the extra-contractual tort claim brought.

example, when the undisputed facts show that the insured's breach of his or her contractual duties was the sole cause of the damages alleged, then the insured cannot prove, as a matter of law, that his or her damages were proximately caused by the insurer's negligence or bad faith. See *Govt. Employees Ins. Co. v. Gingold*, 249 Ga. 156, 157-158 (1) (288 SE2d 557) (1982) (When the insured under a vehicle liability policy failed to cooperate with the insurer by concealing his whereabouts, the insurer was unable to obtain the insured's required consent to settle the accident claim and proceeded to trial. Because the insured's conduct rendered settlement impossible, the insurer was not responsible for the resulting judgment in excess of the policy limits.). Cf. *Piedmont Office*, 297 Ga. at 41-42 (The insured was precluded from pursuing a bad faith failure-to-settle claim against its excess insurer under OCGA § 33-4-6 because the insured had settled the underlying claim without obtaining the insurer's consent, which was a contractually agreed upon condition precedent to the insurer's obligation to make a payment to the insured under

the policy.).[20] Thus, under the facts and circumstances of this case,

OCGA § 33-7-15 and the corresponding policy provisions regarding

notice to the insurer of the filing of a suit against the insured do not

bar liability as a matter of law for Whiteside's negligent or bad faith

failure-to-settle claim on the basis that GEICO did not receive notice

of the lawsuit against its insured.

(b) If the notice provisions do not bar liability for a bad-faith claim, can an insured sue the insurer for bad faith when, after the insurer refused to settle but before judgment was entered against the insured, the insured lost coverage for failure to comply with a notice provision?

---

[20] In *Piedmont Office*, as well as in *Trinity Outdoor, LLC v. Central Mut. Ins. Co.*, 285 Ga. 583 (679 SE2d 10) (2009), both of which involved insurance claims under commercial liability policies, the plain language in each insurance policy did not allow the insured to settle a claim without the insurer's written consent. These policies also provided that the insurer was liable for losses that the insured was "legally obligated to pay," and they contained "no action" clauses expressly providing that the insurer may not be sued unless, as a condition precedent, the insured complied with all of the terms of the policy and the amount of the insured's obligation to pay was determined by a judgment against the insured after a trial or in a written agreement between the claimant, the insured, and the insurer. Thus, we held that "in light of these unambiguous policy provisions," the insured was precluded from pursuing a bad faith claim against the insurer because the insurer did not consent to the settlement and the insured failed to fulfill the contractually agreed upon conditions precedent to the payment of benefits. See *Piedmont Office*, 297 Ga. at 41-42. See also *Trinity Outdoor*, 285 Ga. at 584-587 (1).

The answer to the second certified question is a qualified "yes." The certified record shows that, before Guthrie sent GEICO his settlement demand, GEICO had accepted responsibility for the accident and had determined that Winslett was insured as a covered permissive driver under the policy. Given that Winslett was covered under the policy *at that time*, GEICO's duty to settle arose as soon as GEICO received Guthrie's time-limited, policy-limits settlement demand. See *First Acceptance*, 305 Ga. at 492 (1). Based on the facts in the record before us, GEICO thereafter breached its duty to settle when it unreasonably rejected Guthrie's policy-limits demand. After the breach of duty, the question for the jury was whether, under these circumstances, GEICO should have foreseen Winslett's failure to notify it of suit and of any consequences flowing from that failure, including the entry of a default judgment.

Although GEICO had a duty to settle and breached that duty while Winslett was covered by the policy and before Guthrie's suit was filed, triggering Winslett's duty to notify GEICO, GEICO nevertheless argues that "[n]o bad faith claim can exist until an

28

excess verdict exists[,]" and, "if the insured, for whatever reason, loses coverage before judgment, then coverage does not exist at the point at which the bad faith cause of action accrues." Therefore, GEICO contends, the "insured is exposed to a judgment due to the loss of coverage, not the insurer's actions." Or, stated differently, when Winslett lost coverage as a result of her failure to notify GEICO of suit, any tort liability founded on GEICO's pre-existing breach of its pre-existing duty to settle was extinguished as a matter of law.

GEICO's argument does not make sense in the context of a failure-to-settle tort action, which exists to compensate an insured for losses proximately caused by a breach of the insurer's duty to settle. When a cause of action accrues is important for determining when a suit is ripe for litigation or when the statute of limitation runs.[21] And whether and when Winslett had coverage under the

---

[21] See *Jankowski v. Taylor, Bishop & Lee*, 246 Ga. 804, 806 (273 SE2d 16) (1980) ("[T]he true test to determine when the cause of action accrued is to ascertain the time when the plaintiff could first have maintained his action to a successful result." (citation and punctuation omitted)).

policy is critical to determining the existence and limits of the various contractual and extra-contractual duties GEICO owed her, including the duty to settle and the duty to defend. See Division 2, supra. But, in this case, whether Winslett had coverage when the cause of action accrued is not relevant to whether Winslett's damages were proximately caused by GEICO's breach of its duty to settle. In fact, the certified record shows that the jury could determine, as it did, that GEICO was largely responsible for her loss of coverage.

In support of its argument, GEICO cites a number of cases from other jurisdictions holding that a bad faith failure-to-settle claim accrues when judgment is entered against an insured in excess of the policy limits. None of these cases, however, stand for the proposition that an insured's failure-to-settle claim is extinguished as a matter of law when an insured loses coverage *after* the duty to settle is breached but *before* the excess judgment is entered.[22] And

---

[22] See *Evans v. Mut. Assurance, Inc.*, 727 S2d 66, 67 (Ala. 1999) ("[A] cause of action arising out of a failure to settle a third-party claim made against

30

we have found no case law in support of that proposition.[23]

Therefore, we conclude that, even though Winslett lost coverage when she failed to notify GEICO of Guthrie's suit, GEICO is liable for its negligent failure to settle Guthrie's claim under the circumstances of this case: Winslett was a covered insured under the policy; GEICO owed her a duty to settle; GEICO breached that duty; and the jury found that GEICO was partially at fault for Winslett's failure to comply with the notice-of-suit provision and the resulting default excess judgment entered against Winslett.

(c) Does a party have the right to contest actual damages in a follow-on suit for bad faith if that party had no prior notice of or

the insured does not accrue unless and until the claimant obtains a final judgment in excess of the policy limits."); *Amdahl v. Stonewall Ins. Co.*, 484 NW2d 811, 813 (Minn. App. 1992) ("[C]ourts in other jurisdictions have generally held that an action against a liability insurer for failure to settle a claim does not accrue . . . until the judgment against the insured is final."); *Allstate Ins. Co. v. Campbell*, 639 A2d 652, 659 (Md. 1994) ("[A] cause of action against the insurer for a failure, in bad faith, to settle a claim will not accrue prior to the entry of a judgment against the insured in excess of policy limits."); *Jarvis v. Farmers Ins. Exchange*, 948 P2d 898, 902 (V) (Wyo. 1997) ("A cause of action by an insured against the insurer for a failure, in bad faith, to settle a claim will not accrue prior to the entry of a judgment against the insured in excess of policy limits.").

[23] Whether a loss of coverage before a settlement offer is made affects the insurer's duty to settle is a different question that we do not address today. See Couch on Insurance § 206:9 ("There is a division of authority as to the effect of noncoverage or a valid defense on an insurer's duty to settle a claim against its insured.").

participation in the original suit?

The answer to the third certified question is "no." The law in Georgia is well settled that, "after an insurer's liability for wrongful refusal to settle a claim against its insured is established, the insured or its assignee is entitled as a matter of law to recover damages equal to the amount by which the judgment exceeds policy coverage." *Cotton States*, 256 Ga. App. at 456 (3). See *Camacho v. Nationwide Mut. Ins. Co.*, 188 FSupp.3d 1331, 1351 (II) (C) (N.D. Ga. 2016). [24]

Nevertheless, GEICO argues that applying this measure of damages violated its right to due process under the Georgia

---

[24] As discussed in Division 2, above, "[i]f the insurer's breach of the duty to make a reasonable settlement decision causes an excess judgment against the insured, the insured is entitled to recover from the insurer, in addition to the policy limit, the difference between the policy limit and the underlying judgment." Restatement of the Law of Liability Insurance § 27, Reporter's Notes (a). The insured's liability for the excess judgment is founded in tort law; however, liability for the "policy limit" portion of the judgment is founded in contract law. In this case, the judgment did not include the $30,000 policy limits. As noted in the order of the federal district court: "Consequently, it is undisputed that[,] because of [GEICO's] failure, Winslett suffered damages in the amount of the judgment (less the reduction for her own negligence and the $30,000 policy coverage limits, which [Whiteside] did not pursue in this action." *Whiteside*, 352 FSupp.3d at 1266 (III).

Constitution because it deprived it of an opportunity to argue that the default judgment in excess of policy limits entered in the underlying litigation exceeded the true value of Guthrie's damages. First, GEICO has not cited any authority, nor have we found any, that suggests that the measure of damages applicable in this case constitutes a violation of due process under the Georgia Constitution.[25] Second, this argument makes little sense under the

---

[25] GEICO's reliance on uninsured motorist insurance cases is misplaced. As we have explained:

> The purpose of uninsured motorist or UM coverage is to place the injured insured in the same position as if the offending uninsured motorist were covered with liability insurance. Stated otherwise, the purpose of uninsured motorist legislation is to require some provision for *first-party insurance coverage* to facilitate indemnification for injuries to a person who is legally entitled to recover damages from an uninsured motorist, and thereby to protect innocent victims from the negligence of irresponsible drivers. The Georgia uninsured motorist statute is designed to protect the insured *as to his actual loss*, within the limits of the policy or policies of which he is a beneficiary.

(Citations and punctuation omitted; emphasis supplied.) *State Farm Mut. Auto. Ins. Co. v. Adams*, 288 Ga. 315, 316-317 (702 SE2d 898) (2010). Because the UM insurer is obligated to compensate its insured for actual losses caused by the uninsured motorist, Georgia law gives the UM insurer the right to receive notice of suit and to intervene in a case brought by its insured against the uninsured motorist. See OCGA § 33-7-11 (d). See *St. Paul Fire & Marine Ins. Co. v. Goza*, 137 Ga. App. 581, 584 (1) (224 SE2d 429) (1976). Absent timely notice of a claim, a suit, or the satisfaction of other conditions precedent to UM coverage under the policy, the insurer is relieved of its obligation to provide

circumstances of this case because damages in a negligent failure-to-settle case reflect the damages the insured incurred as a result of the insurer's tortious failure to settle a claim brought against the insured by a third party. If GEICO were able to relitigate Guthrie's personal injury claims in the failure-to-settle suit, and then use *Guthrie's* measure of damages as a substitute for what *Winslett* actually suffered as a result of the excess default judgment against her, Winslett may not be made whole even if the jury finds entirely in her favor. Winslett remains liable to Guthrie, even if her bankruptcy trustee succeeds on the failure-to-settle claim against

---

UM coverage *as a matter of contract law*. See *Hyde v. State Farm Mut. Auto. Ins. Co.*, 356 Ga. App. 533, 536 (2) (848 SE2d 145) (2020) (In an action for uninsured motorist benefits, the trial court did not err in granting summary judgment to the insurer because, among other things, the insured failed to give timely notice of a potential claim as required by the policy.). Further, if an insured under a UM policy were to sue its insurer for negligent or bad faith failure to settle a UM claim, the case would involve a first-party, not a third-party, insurance claim. Whether, under such circumstances, the measure of damages would be limited to the insured's actual damages is not before us. Unlike these UM cases, Winslett's damages are not measured by the personal injuries she suffered as a result of an accident with a third party. Rather, Winslett's damages were caused by GEICO's failure to settle a third party's claim for personal injury damages against her. Thus, these UM cases provide no authority for the proposition that GEICO was denied due process under the circumstances of this case.

GEICO; therefore, if the bankruptcy estate does not recover enough from GEICO to satisfy Guthrie's judgment, the estate would not be fully compensated for Winslett's damages, and GEICO would escape responsibility for breaching its settlement duty to Winslett. Such an outcome would deny Winslett the full measure of compensatory damages allowed under Georgia law.

*Certified questions answered. All the Justices concur, except Boggs and Peterson, JJ., disqualified.*

Decided April 19, 2021.

Certified questions from the United States Court of Appeals for the Eleventh Circuit.

*Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, Joseph R. Cruser, Kathleen M. Hurley; Wallace Miller III; Smith, Gambrell & Russell, Leah Ward Sears, Edward H. Wasmuth, Jr., Colin D. Delaney*, for appellant.

*Bondurant, Mixson & Elmore, Timothy S. Rigsbee, Frank M. Lowrey IV, Michael B. Terry; Charles A. Gower, P.C., Charles A. Gower, Jr., Miranda J. Brash, Shaun P. O'Hara*, for appellee.

*Swift, Currie, McGhee & Hiers, David M. Atkinson, Bradley S. Wolff, Douglas L. Clayton; Drew, Eckl & Farnham, Jeffrey S. Ward, Elissa B. Haynes; Balch & Bingham, Malissa A. Kaufold-Wiggins; Ellis, Painter, Ratterree & Adams, Philip M. Thompson; Slappey & Sadd, James N. Sadd, Richard E. Dolder, Jr.; David A. Bersinger*, amici curiae.