**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

August 9, 2023

# In the Court of Appeals of Georgia

A23A0944. H. J. RUSSELL & COMPANY v. LANDMARK AMERICAN INSURANCE COMPANY et al.

BROWN, Judge.

In this insurance coverage case, H. J. Russell & Company ("the insured") appeals from the trial court's order granting a joint motion to dismiss filed by Landmark American Insurance Company, Steadfast Insurance Company, Westchester Surplus Lines Insurance Company, and Certain Underwriters at Lloyd's London Subscribing to Policy No. HNYPRP19757135, Syndicate Numbers 33 and 1886, as administered by Hiscox, Inc. (collectively "the insurers"). For the reasons explained below, we affirm.

"A motion to dismiss should be granted when the complaint shows with certainty that the plaintiff would not be entitled to relief under any state of facts that

could be proven in support of his claim. On appeal, we review the trial court's ruling on a motion to dismiss de novo." (Citation and punctuation omitted.) *RLI Ins. Co. v. Duncan*, 345 Ga. App. 876 (815 SE2d 558) (2018). "Further, in reviewing the grant of a motion to dismiss, we must construe the pleadings in the light most favorable to the appellant with all doubts resolved in the appellant's favor." (Citation and punctuation omitted.) *Ga. Interlocal Risk Mgmt. Agency v. City of Sandy Springs*, 337 Ga. App. 340, 343 (788 SE2d 74) (2016).

In its first amended complaint, the insured asserts claims for breach of contract and declaratory judgment based upon the insurers'

> wrongful refusal and failure to provide coverage to the insured . . . for [its] substantial losses resulting from, among other things, the novel coronavirus outbreak and on-going COVID-19 pandemic, as well as civil authority orders issued by federal, state, and local governments, limiting, restricting, or prohibiting access to property within one (1) mile of [the insured's] Covered Properties as defined in the insurance policies.

In its view, a covered direct physical loss of the property resulted from: "[t]he suspected, but not actual, presence of the novel coronavirus . . . and the necessary [s]uspension of multiple construction projects . . . due to the potential for bodily injury and harm to employees and others" and civil authority orders that "necessarily

2

suspended the [i]nsured's work, including, but not limited to, the April 2, 2020 Executive Order 04.02.20.01 which required all individuals to shelter in place within their homes or places of residence." As a result of this alleged direct physical loss of its property, the insured contends that it suffered millions of dollars in losses due to "delayed construction projects, inability to obtain rental payments, and loss of construction program management fees on construction projects which were delayed or terminated outright."

> In cases such as this, our inquiry must begin with the language of the insurance contract. Under Georgia law, insurance companies are generally free to set the terms of their policies as they see fit so long as they do not violate the law or judicially cognizable public policy. Thus, a carrier may agree to insure against certain risks while declining to insure against others. In construing an insurance policy, we begin, as with any contract, with the text of the contract itself. Where the contractual language unambiguously governs the factual scenario before the court, the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured.

(Citation and punctuation omitted.) *Trinity Outdoor v. Central Mut. Ins. Co.*, 285 Ga. 583, 584-585 (1) (679 SE2d 10) (2009). This inquiry requires that the policy be read as a layperson would read it, and we must "consider the insurance policy as a whole,

3

and a preferred construction will give effect to each provision, attempt to harmonize the provisions with each other, and not render any of the policy provisions meaningless or mere surplusage." *Nat. Cas. Co. v. Ga. School Bds. Assn.-Risk Mgmt. Fund*, 304 Ga. 224, 228 (818 SE2d 250) (2018).

The policy at issue states that it "[i]nsures against direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property. . . ." (Emphasis in original.) The policy defines "Covered Cause of Loss" as "[a]ll risks of direct physical loss of or damage from any cause unless excluded." In addition to this all-risk coverage, the policy provides coverage for suspension of business activities "caused by order of civil or military authority that prohibits access" if the order "result[s] from a civil authority's response to direct physical loss of or damage caused" by a covered loss to property that the insured does not have an interest in, if that other property is located within a mile of an insured location. Coverage under the "Protection and Preservation of Property" provision of the policy covers costs necessary to temporarily protect and preserve the property from "actual or imminent physical loss or damage due to a **Covered Cause of Loss**." (Emphasis in original.)

In *AFLAC v. Chubb & Sons*, 260 Ga. App. 306 (581 SE2d 317) (2003), this Court interpreted a nearly identical phrase ("direct physical loss of, or damage to") and concluded that

> the common meaning of the words and the policies as a whole indicate that it contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.

Id. at 308 (1). The Eleventh Circuit recently applied this definition to a case involving insurance coverage for losses connected to the COVID-19 pandemic and commented that "under Georgia law, a 'direct physical loss' always involves a tangible change to a property." *Henry's La. Grill v. Allied Ins. Co. of America*, 35 F4th 1318, 1320-1321 (III) (11th Cir. 2022). It concluded that insurance for "physical loss of or damage" to property "does not extend to the intangible harm caused by Covid-19 or by a declaration of public emergency issued in its wake." Id. at 1321 (III). As demonstrated by the numerous cases cited in the insurers' brief, the overwhelming majority of courts (federal and state) have rejected similar claims for insurance coverage due to the COVID-19 pandemic. See, e. g., *Terry Black's Barbecue v. State Auto Mut. Ins. Co.*, 22 F4th 450 (5th Cir. 2022)*; 10012 Holdings v. Sentinel Ins. Co.*,

5

21 F4th 216 (2d Cir. 2021); *Cherokee Nation v. Lexington Ins. Co.*, 521 P3d 1261 (Ok. 2022); *Sullivan Mgmt. v. Fireman's Fund Ins. Co.*, 879 SE2d 742 (S. C. 2022).

After reviewing the policy at issue in this case, all relevant canons of construction, and construing the pleadings in the light most favorable to the insured, we too conclude that the insured would not be entitled to relief under any state of facts that could be proven in support of its claim for coverage under the policy. We therefore affirm the trial court's grant of the insurers' motion to dismiss.

*Judgment affirmed. McFadden, P. J., and Markle, J., concur.*